SANSON HOSIERY MILLS, Inc., et al. v. GLEN RAVEN KNITTING MILLS, Inc.
Civ. No. 477.

United States District Court
M. D. North Carolina.
Oct. 20, 1950.

Smith, Wharton, Sapp & Moore, Julius C. Smith, and Armistead W. Sapp, all of Greensboro, N. C., Henry N. Paul, Jr., Robert B. Frailey, and Paul & Paul, all of Philadelphia, Pa., for plaintiffs.

T. H. Brooks, L. P. McLendon, Greensboro, N. C., Joseph G. Denny, Jr., Philadelphia, Pa., for defendant.

HAYES, District Judge.

This is a suit for infringement of a design patent (Bley Des. 151,732) for hosiery. Defendant challenges the validity, denies infringement and alleges conduct on the part of plaintiffs barring them of equitable relief.

William G. Bley was the inventor who assigned his application to himself and Richard C. Spurgeon, copartners trading as Bley and Spurgeon to whom the patent issued on November 16, 1948. On February 1, 1949, the partnership assigned one half interest to the other plaintiff, Sanson Hosiery Mills, Inc. At the date of trial licenses had been granted to Spurgeon Hosiery Corp., November 3, 1948, to Vo-Jul Textiles, Inc., February 4, 1949 and to Cressida, Inc., March 10, 1950.

Sanson manufactured stockings under the patent in suit and sold them unbranded and under the trade mark "Picturesque" or "Picture Frame"; Spurgeon made and sold stockings unbranded and under the trade mark "Dupliquette".

Glen Raven Knitting Mills, Inc. began making the accused stockings (P's Exs. A2, A3, A4, also Ex. B attached to the complaint) in May 1949, a few months after defendant's Vice-president saw them worn by "Models" at a public exhibit in New York.

The patent in suit is for a lady's stocking having an ornamental heel and foot-sole reinforcement characterized by a surrounding frame spaced from and paralleling the marginal contour of the major portion of such reinforcement, creating what is known in the trade as "Picture Frame" because the design suggests a picture frame. This framing appearance, present alike in the hosiery made by plaintiff and defendant, is a distinctly new feature which was neither disclosed nor suggested in the prior Art. This novel design captured the market in a few months and became at once the fad for ladies' full fashioned hosiery. The conventional reinforced heel and sole

were converted into an ornamental appearance, due to the modern shoe which exposes most of a lady's foot, which produced an immediate success.

The efforts of designors, over a period of 75 years to produce a satisfactory heel design for hosiery had been unsuccessful. The need was generally acknowledged throughout the trade. One Hundred and Eighty of Four Hundred and Nine patents relating to design for hosiery related to the designs for the heel and foot area of the stocking, but not one of them achieved any substantial success. There is no sufficient proof that any of the designs cited by the defendant was ever embodied in a stocking which was actually sold nor had any one of them made any real impression upon the Art. Although the defendant cited many paper patents, it was unable to produce a single stocking made under any of the prior designs, patents or publications listed in its answer.

The wide spread acceptance of Bley's new stocking is demonstrated by the expansion of Spurgeon Hosiery Corp. which offered the hosiery for sale in March, 1948. The Company was small at that time, employing about twenty employees. Its sales reached 10,000 dozen per month by the end of 1948 and 26,000 dozen per month by the end of 1949. In a leading store in Philadelphia sales of the Bley design stockings ("Dupliquette") constituted 65% of the entire sales when sold with other stockings made by several of the largest and most prominent full fashioned hosiery manufacturers. Sanson Hosiery Mills began the manufacture of the Bley design in January 1949. Starting at the bottom, in a period of 16 months its accounts increased from 11 to 3,981 and in the first year its sales rose from 3,000 dozen pairs per month to 48,000. By the end of its first year, its product was to be found in all of the 48 states and our territories and in 26 foreign countries. Its annual business will exceed $10,000,000.00. The popularity of the hose is attributable to the attractive design; in all other respects the hosiery is of the same material and manufacture.

Its popularity is further attested by the numerous efforts to copy or imitate its design by other manufacturers. At the time of trial, 20 defendants had signed consent decrees admitting the validity of the patent and infringement. These decrees were entered in Pennsylvania, New Jersey, Maryland, Virginia, North Carolina, Georgia, Alabama, Tennessee, Illinois and Ohio.

The defendant offered 13 mechanical patents and six design patents in evidence, in addition to numerous advertisments and publications. Not one of them discloses or remotely suggests the "picture frame" concept of the Bley Patent. The closest approach to it is Nebel Des. 73620 which shows a heel with straight vertical side edges. A design is formed at the top of the heel consisting of a cross which appears in light color corresponding to the web of the stocking, superimposed upon a diamond-shaped figure which appears in darker color because of form on a part of the reinforcement. The ornamental design element is formed within the enforcement by the contrast of the light colored figure against the dark colored background. The effect is altogether different from the framed pattern of Bley.

■■■■■ The Bley design must be viewed as a whole in accordance with the well established rule in Dobson v. Dornan, 118 U.S. 10, 15, 6 S.Ct. 946, 948, 30 L.Ed. 63, in which it is said: "Undoubtedly the claim in this case covers the design as a whole, and not any part of it as a part, and it is to be tested as a whole, as to novelty and infringement." Old elements in a design do not of themselves establish want of invention in assembling them. Ashley v. Weeks-Numan Co., 2 Cir., 220 F. 899. Bley's design, tested by this rule, is both novel and ornamental and none of the prior Art citations suggests or discloses the Bley design.

■■■■■ On determining whether a patent involves invention it is important to consider—

(a) its commercial success, J. R. Wood & Sons, Inc., v. Abelson's, Inc., 3 Cir., 74 F.2d 895.

(b) universal copying, particularly by the defendant, Hoeltke v. C. M. Kemp Mfg. Co. 4 Cir., 80 F.2d 912, 919.

(c) wide public acceptance, Wahl Clipper Corp. v. Andis Clipper Co., 7 Cir., 66 F.2d 162, 165.

(d) numerous disclosures cited by the defendant, Reynolds v. Whitin Machine Works, 4 Cir., 167 F.2d 78, 83-84.

(e) fruitless efforts of prior inventors, Baker-Cammack Hosiery Mills, Inc., v. Davis Co., 4 Cir., 181 F.2d 550.

(f) acceptance of licenses and consent judgments, Coltman, v. Colgate-Palmolive-Peet Co., 7 Cir., 104 F.2d 508, 511.

Applying these tests to the patent in suit the evidence clearly establishes invention.

██ There is no merit in the contention of double patenting. Bley Patents Design Nos. 151,732 and 151,733 were issued the same day on applications filed the same day; 732 extends throughout the foot and cradle of the stocking and 733 extends only throughout the heel. They are complimentary, as in Baker-Cammack Hosiery Mills, Inc., v. Davis Co., supra. Companion patents issued on the same day which expire on the same date do not prolong the life of either. United States Industrial Chemical Co. v. Theroz Co., 4 Cir., 25 F.2d 387. No damage results to the public from the simultaneous issuance of the patents. Deister Concentrator Co. v. Deister Machine Co., 7 Cir., 263 F. 706.

### Infringement.

██ Defendant's stocking is clearly indistinguishable from the stocking of the Bley patent. Such differences as exist are of degree and not substantial. The overall effect on the eye is the same. The motif of the Bley invention is present in defendant's stocking. Slight differences or alterations as may be discovered in defendant's stocking do not alter the fact that it is essentially a duplicate of the Bley invention. If slight departure from the original would deprive the inventor of protection a patent would soon be valueless. Matthews v. Koolvent Metal Awning Co., 5 Cir., 158 F.2d 37; Graver Tank & Mfg Co., Inc., v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854.

██ It is not necessary to consider at length the defense of anti-trust laws vio-

lations by the plaintiffs. There is no evidence to support the claim. The same defense was asserted in Baker-Cammack Hosiery Mills, Inc., v. Davis Co., supra, without avail. There is much less merit in the plea than that presented in the Davis case.

A decree will be entered in favor of plaintiffs in accordance with this opinion, the findings of facts and conclusions of law.