## SHARNAY HOSIERY MILLS, Inc. v. SANSON HOSIERY MILLS, Inc. et al.

### Civ. A. No. 11574.

United States District Court
E. D. Pennsylvania.

Oct. 17, 1951.

Louis Necho, Harry A. Rutenberg, Philadelphia, Pa., for plaintiff.

Paul & Paul by Henry N. Paul, Philadelphia, Pa., for defendants.

WELSH, District Judge.

On September 19, 1951, the motion of plaintiff for preliminary injunction was argued and submitted to the Court for decision. Now the Court, after examining the briefs and the whole record, makes the following

### Findings of Fact

1. Plaintiff, Sharnay Hosiery Mills, Inc., is a manufacturer of ladies' hosiery.

2. Defendants are the owners of United States Letters Patent No. Des. 151,732 issued November 16, 1948 for a design for ladies' hosiery, said patent being hereinafter referred to as the Bley Patent.

3. The within action seeking a declaratory judgment with respect to the Bley Patent was brought by plaintiff. In response to the action defendants counterclaimed

·charging infringement by the plaintiff of the Bley Patent and asking for an injunction and an accounting.

4. After joinder of issue the instant motion to enjoin defendants from threatening or otherwise annoying or harassing it (plaintiff) or its retail customers was filed.

5. Defendants' Exhibit H–1 is representative of stockings made and sold by defendant, Sanson Hosiery Mills, Inc., under the Bley Patent. It appears from the affidavits, requests for admission, etc., that plaintiff's Exhibit A and defendants' Exhibits B–1 to B–12 inclusive are representative of some of the different styles of stockings made and sold by plaintiff, Sharnay Hosiery Mills, Inc.

6. Defendant, Sanson Hosiery Mills, Inc., sells the patented stockings under its registered trade-mark "Picturesque" and "Picture Frame Heel".

7 Prior to the appearance of the stockings of the Bley Patent on the market, nearly all stockings worn by women embodied a conventional type of heel and foot-sole reinforcement having at the back thereof either a plain rectangular or triangular configuration or a patch tapering upwardly to a narrow top. The Bley invention revitalized the old conventional reinforcement, bringing out its latent possibilities and converting it into an attractive design. What had heretofore constituted a mere wear-resistant reinforcement, largely functional and often relatively unsightly in appearance, was transformed into an ornamental feature of such appeal to the purchasing public that it was an immediate success.

8. Following the success of the Bley stocking and the wide public acceptance thereof, numerous infringements appeared throughout the country. The infringements have been so extensive that the patent owners have been compelled to take vigorous action in order to protect their rights under the patent. Accordingly, the defendants have notified all persons deemed to be infringers of the Bley Patent of their patent rights, and have brought numerous infringement suits.

9. In many instances retail establishments have been responsible for the widespread infringement of the Bley Patent, and accordingly such retail establishments have been notified of defendants' patent rights.

10. In general the infringement notices sent by defendants have not been directed to the customers of particular manufacturers, nor have they been limited to particular styles or designs of alleged infringing hosiery. Such notices have been sent to all persons deemed to be infringers of the Bley Patent, wherever found.

11. At the time of the hearing on the instant motion forty-three suits brought on the Bley Patent had been terminated by the entry of consent judgments decreeing the patent to be valid and infringed. The defendants in said forty-three suits have paid substantial sums to the defendants herein as liquidated damages. Additionally, the patent has been litigated and found to be valid and infringed in the case of Sanson Hosiery Mills, Inc., v. Glen Raven Knitting Mills, Inc., D.C., 95 F.Supp. 134 and 4 Cir., 189 F.2d 845, 847.

12. In the opinion of Judge Soper in the aforementioned suit against Glen Raven, the following statement appears: "Thirty-eight photographs on exhibit show unabashed attempts to copy, and most of them do not display even an attempt to introduce a subtle variation to the design." One of the thirty-eight photographs thus referred to by Judge Soper (plaintiff's Exhibit G–30 in the Glen Raven case; defendants' Exhibit B–12 in the instant case) is a photograph of a stocking of the type made and sold by plaintiff, Sharnay Hosiery Mills, Inc., and similar in appearance to the stockings, Exhibits B–1 to B–11 inclusive, admittedly made and sold by plaintiff.

13. The accused stockings, such as defendants' Exhibits B–1 to B–12 inclusive, are similar in their general appearance to the patented design; the differences between the patented design and the various accused stockings amount to a fine distinction such as would not ordinarily be detected by hosiery buyers and sellers.

14. Under the belief that the accused stockings constitute an infringement of their patent rights, and upon the advice of

counsel, defendants have sent notices to those dealing in the accused stockings, advising such persons of defendants' patent rights and of their intention to protect and enforce the same. All such notices sent after May 11, 1951 containing any reference to the decision in the Glen Raven case included a true and correct copy of the opinion of the Court of Appeals.

15. None of the notices complained of have either quoted from the opinion of the Court or attempted to interpret, construe or misrepresent the scope or effect of the decision.

16. The notices which defendants mailed to persons alleged now to be customers of plaintiff were sent for the purpose of protecting and enforcing defendants' rights and not for the purpose of harassing plaintiff's business. In many instances defendants have not been able to ascertain with certainty whether plaintiff is in fact the manufacturer of the alleged infringing stockings, even plaintiff itself cannot determine whether certain stockings are its own product.

17. Defendants' attitude toward infringing wholesalers and retailers has been eminently fair. After the decision in the Glen Raven case, defendants, by an announcement in Women's Wear Daily, offered to release wholesalers and retailers, not already involved in litigation, from liability for past infringement of the Bley Patent upon their mere assurance that they would cease further sales of infringing hosiery.

## Discussion

The defendants as owners of the Bley Patent have the legal right to notify infringers of their (defendants') patent rights and to warn them that unless they cease their acts of infringement measures will be taken to protect and enforce said patent rights. No limitation is placed on said legal right except that the defendants are forbidden to act in bad faith with the sole purpose of driving plaintiff out of business.

Thus, the real question presented is: Were defendants' notices to plaintiff's retail customers given in bad faith with the intention of destroying plaintiff's business? The burden of establishing that defendants acted in such a manner is on the plaintiff. It has not met its burden. On the contrary, it has been established that the defendants acted in good faith and that the notices given by them were eminently fair. The circumstances with respect to the notices given by the defendants are discussed below.

(a) Prior to the decision in the Glen Raven case the defendants in defense of their patent rights sent letters to all persons and firms deemed to be infringers (including plaintiff's customers) advising them of their (defendants') patent rights and calling upon them to desist from selling stockings embodying the patented design. A perusal of the letters makes it clear that said letters did not exceed the legal authority vested in the defendants as patent owners. As a matter of fact, we think that the defendants in defense of their patent rights applied only a minimum amount of force, less force would have constituted no force at all.

The action taken by the defendants prior to the decision in the Glen Raven case was justified on two grounds. The accused stockings, defendants' Exhibits B-1 to B-12, are substantially similar to the stocking made and sold by the defendants, defendants' Exhibit H-1. And, action with respect to plaintiff's customers and other alleged infringers was taken only after counsel had advised it.

(b) The letters sent out by the defendants after the decision in the Glen Raven case were substantially the same as those sent out before, except that some of said letters contained a reference to said decision and enclosed a true and correct copy of same. The plaintiff objects to the use of the Glen Raven case on the ground that it, plaintiff, was not before the Court in that case. The objection we think is not well taken. It will be seen that Judge Soper in the Glen Raven case examined thirty-eight photographs of ladies' hosiery and referred to them as "unabashed attempts to copy, and most of them do not display even an attempt to introduce a subtle variation to the design". It will be seen also that one of the thirty-eight photographs thus referred to (G-30 in the Glen Raven case) is a photograph of a stocking that is substantially similar to the accused stockings involved

here (defendants' Exhibits B–1 to B–12). Under such circumstances we think that defendants' use of the Glen Raven opinion, particularly since its use had been advised by counsel, was justified and proper.

(c) By inserting their announcement in the Women's Wear Daily the defendants again demonstrated their fair attitude toward all those deemed to be infringers. The defendants in said announcement offered to release wholesalers and retailers, not already involved in litigation, from liability for past infringement of the Bley Patent upon their mere assurance that they would cease further sales of infringing hosiery.

### Conclusions of Law

1. The defendants as owners of the Bley Patent have the legal right to notify infringers of their (defendants') patent rights and to warn them that unless they cease their acts of infringement measures will be taken to protect and enforce said patent rights.

2. The defendants not only have the right to notify and to warn infringers at the wholesale and manufacturer levels but also to notify and warn infringers at the retail level. Birdsell v. Shaliol, 112 U.S. 485, 5 S.Ct. 244, 28 L.Ed. 768; Triangle Conduit & Cable Co., Inc. v. National Electric Products Corporation, 3 Cir., 138 F.2d 46.

3. No limitation is placed on the right hereinbefore mentioned except that the defendants are forbidden to act in bad faith with the sole purpose of driving plaintiff out of business. A. B. Farquhar Co. Ltd. v. National Harrow Co., 3 Cir., 102 F. 714; Virtue v. Creamery Package Mfg. Co., 8 Cir., 179 F. 115, affirmed 227 U.S. 8, 33 S. Ct. 202, 57 L.Ed. 393; Clip Bar Mfg. Co. v. Steel Protected Concrete Co., D.C., 209 F. 874, affirmed 3 Cir., 213 F. 223; Wallerstein v. Christian Feigenspan, Inc., 215 F. 919; Aralac, Inc. v. Hat Corp. of America, 3 Cir., 166 F.2d 286 and Cheney Co. v. Cunningham, D.C., 37 F.Supp. 224.

4. The plaintiff failed to meet its burden of establishing that defendants' notices to plaintiff's retail customers were given in bad faith with the intention of destroying plaintiff's business.

5. Accordingly, the motion of plaintiff for preliminary injunction will be denied.

6. In view of the within holding it will be unnecessary to determine whether or not defendants' conduct has caused or will cause damage to plaintiff's business.

An order denying the motion of plaintiff for preliminary injunction will be prepared and submitted.