SANSON HOSIERY MILLS, Inc. et al.
v. WARREN KNITTING
MILLS, Inc.

No. 10863.

United States Court of Appeals,
Third Circuit.

Argued Jan. 9, 1953.

Decided Feb. 20, 1953.

Max Mehler, Newark, N. J. (Archie Roth, Blairstown, New Jersey, Sam Kooper and Leo C. Krazinski, New York City, on the brief), for defendant-appellant.

Henry N. Paul, Jr., Philadelphia, Pa. (Robert J. Tait Paul, Camden, New Jersey, Robert B. Frailey and Paul & Paul, Philadelphia, Pa., on the brief), for appellees.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment for plaintiffs in a patent infringement suit. The subject of the action is Bley design patent No. 151,732, issued November 16, 1948, to

plaintiffs Bley and Spurgeon who subsequently assigned a one-half interest therein to the other plaintiff, Sanson Hosiery Mills, Inc. Appellant is a manufacturer of women's hosiery. The patent is for a design on 'ladies' stockings achieved by tracing a uniformly-spaced line around the reinforced heel and cradle of the stocking so as to convert the reinforcement into a pleasing ornamental feature. The design is known as a "picture frame heel."

Defendant pleaded noninfringement and patent misuse and counterclaimed for $100,-000 in damages, but did not question the validity of the patent. There is no appeal from the dismissal of the counterclaim and misuse has been abandoned as a defense, leaving infringement the sole issue.

■ The test of infringement in design patent cases is derived from Gorham Manufacturing Co. v. White, 1852, 14 Wall. 511, 81 U.S. 511, at page 528, 20 L.Ed. 731, where the Supreme Court stated:

> "We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

Before applying this criterion to the facts before us it would be helpful to review in brief the background and history of the Bley patent. Many design patents on women's hosiery were obtained prior to the issuance of the Bley patent but none of them presented, as did Bley, "a frame disposed in substantially uniformly spaced, parallel, surrounding relation to the heel and footsole reinforcement of a lady's stocking." Clock designs and other embellishments enjoyed a brief vogue about the year 1930. The so-called "heel-within-a-heel" stocking consisting of two and three-ply heel reinforcements, sometimes arranged in parallel fashion, also appeared. The latter type, however, was utilitarian in function while plaintiff's conception served an

aesthetic purpose and, as found by the trial court, for the first time embodied "a design entity which presents the appearance of a stylized framed pattern akin to a framed picture."

The evidence indicates that from the beginning stockings utilizing the Bley patent enjoyed an immense popularity. Sales increased steadily from modest beginnings in 1948, the first year of manufacture, until 1951 when 1,175,000 dozen pairs were sold. The success of the picture frame heel inspired many imitations and led to the institution of 97 infringement suits, in 71 of which consent decrees were entered for plaintiffs.[1] Only two cases cited to us, not including the present action, were tried, Sanson Hosiery Mills, Inc., v. Glen Raven Knitting Mills, Inc., D.C.M.D.N.C.1950, 95 F.Supp. 134, affirmed, 4 Cir., 1951, 189 F.2d 845, and Sanson Hosiery Mills, Inc., v. S. H. Kress & Company, Inc., D.C.M.D.N.C., 1952, 109 F.Supp. 383. Both held the Bley patent infringed.

Defendant's president, Miran, testified that because of customer demand he "decided to make some design heels, fancy heels. I asked my patent attorney to get me some of the old design patents and we made a study of them * * *." The Bley patent was among those he examined at the time when, according to his admission, from a combination of several of those old design patents he "created or developed the design that is embodied in the stockings that are now charged to infringe in this case." Miran further testified that he warned the Warren salesmen not to use the Sanson trade-names. At first he said that he did this from the "beginning". He then qualified that statement by saying that he didn't recall the date he first so cautioned the salesmen "but", said he, "when it became an issue we definitely cautioned them."

■ Defendant suggests that plaintiffs should not prevail because they did not produce "ordinary purchasers" to testify on resemblance and deception. Actual "ordinary purchasers" are not necessary to

---

1. Many infringers later obtained licenses to use the Bley patent. In addition substantial sums of money were paid plaintiffs by way of liquidated damages.

prove the type of design infringement with which we are here dealing.[2] It can be established, as it was, by an expert in the particular field applying the Gorham rule in comparing the alleged infringing designs with the patent. Plaintiffs' witness, Ischinger, an inventor and patent attorney of thirty years' experience who had invented and patented more hosiery designs than anyone else, testified fully and unequivocally on this question. A careful reading of his testimony and that of Miran combined with our viewing of the photographic reproductions as well as the various stocking exhibits in evidence persuades us that the district court properly held the Bley patent infringed. While some of defendant's stockings are almost identical with plaintiffs', others differ slightly in appearance. We agree with the conclusions of the trial judge that such differences as exist between the accused stockings and those of the Bley patent are minute, inconsequential and insusceptible of differentiation by the ordinary purchaser.

It is urged on behalf of appellant that its stockings do not infringe since the Bley patent is limited in scope (1) by prior art, (2) because no written description accompanied the patent application and (3) because Bley himself acknowledged the limitation of No. 151,732 by applying for a patent on another stocking design, substantially similar to the first except that it has whip stitching on the frame. Taking the second point first, appellant relies on Patent Office Rule 81, in effect at the time of the Bley application but since superseded by Rule 153, 35 U.S.C.A.Appendix. Rule 81 read in part as follows:

"Since a design patent gives to the patentee the exclusive right to make, use, and vend articles having the appearance of that disclosed, and since the appearance can be disclosed only by a picture of the article, the claim should be in the broadest form for the article as shown."

Rule 153 now provides, inter alia, that "No specific description, other than a reference to the drawing, is ordinarily required or permitted." Although design patents governed by the old rule which were unaccompanied by written description may not have been as liberally construed as they now are under Rule 153, the decisions do not indicate that they should be as narrowly confined to the disclosed design as appellant would wish. Geo. Borgfeldt & Co. v. Weiss, 2 Cir., 1920, 265 F. 268; Cheney Bros. v. Weinreb & Weinreb, C.C. S.D.N.Y.1910, 185 F. 531.

As already pointed out there is nothing in the prior art to limit the Bley patent so far as the present issue is concerned. Judge Soper in his Glen Raven opinion completely disposed of the point in passing on the validity of the Bley patent. We deem of no importance the fact that Bley himself, perhaps out of an abundance of caution, obtained another patent apparently quite similar to the one before us, our only problem being whether defendant infringed No. 151,732. As to it defendant failed to show that this patent should not be accorded its normal range of equivalents.

Appellant also complains that evidence having to do with the number of infringement suits instituted, the number of consent decrees entered and licenses granted and the commercial success of the Bley patent was improperly allowed and considered. The evidence was properly admitted under the familiar rule that patents which have made a mark on the trade and have advanced the art are entitled to a more liberal treatment in infringement suits than are those of less merit.[3] The disputed

2. It is possible, as appellees intimate, that testimony of "ordinary purchasers" given several years after the design patent is marketed and after the public has been educated to distinguish it from its many imitations should not be given much weight in an infringement suit because "the test of infringement must be the effect produced upon the eye of a prospective purchaser who for the first time sees the two articles and is pleased to the point of buying." Standard Match Corporation v. Bell Machine Co., 7 Cir., 1936, 83 F.2d 365, 367.

3. Eibel Process Co. v. Minnesota & Ontario Paper Co., 1923, 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523; Specialty Equipment & Machinery Corp. v. Zell Motor Car Co., 4 Cir., 1952, 193 F.2d 515, 520;

evidence tends to demonstrate the worth of the Bley patent. Its admission was not erroneous.

The judgment will be affirmed.

Root Refining Co. v. Universal Oil Products Co., 3 Cir., 1935, 78 F.2d 991;

Crozier-Straub, Inc., v. Reiter, D.C.E.D. Pa.1929, 34 F.2d 577.