**SANSON HOSIERY MILLS, Inc. et al.**

v.

**NEBEL KNITTING CO., Inc.**

Civ. A. No. 840.

United States District Court
W. D. North Carolina.

Jan. 7, 1954.

Smith, Sapp, Moore & Smith, Armistead W. Sapp, Greensboro, N. Car., Henry N. Paul, Jr., Robert B. Frailey,

Paul & Paul, Philadelphia, Pa., for plaintiffs.

William H. Abernathy, Eaton & Bell, Whiteford S. Blakeney, Charlotte, N. Car., for defendant.

WARLICK, District Judge.

This is a suit for infringement of Bley Design Patents Numbers 151,732 and 151,733, which issued from the Patent Office on November 16, 1948 for designs for ladies' hosiery. The patents were for a term of fourteen years. William G. Bley was the inventor and subsequently assigned his application for invention to himself and one Richard C. Spurgeon, who, traded as co-partners, under the style name of Bley and Spurgeon. Subsequently and prior to the institution of this action the partnership assigned one half interest to the Sanson Hosiery Mills, Inc., all of whom holding such rights are the plaintiffs in this action.

The defendant is a North Carolina corporation and has its place of business in Charlotte, Mecklenburg County, in the Western District of North Carolina. There its products are manufactured.

Jurisdiction is obtained through the alleged question of infringement of letters patent, and the action arises under Title 28 U.S.C.A. §§ 1338 and 1400.

Plaintiffs' exhibit A–6 and A–7 are copies of the Bley patents and are representative exhibits of those stockings made and sold under the patents in suit. A–6 being the "picturesque" and A–7 the "picture frame".

Plaintiffs' exhibit A–2, D–1, D–2, D–3, and D–4 are representative of the accused stockings manufactured and sold by the defendant, Nebel Knitting Co., Inc.

The Bley patents as numbered are what one would commonly call companion patents. They issued on the same date, on applications which had been filed with the Patent Office on the same day. They disclosed variant forms of the so called "picture frame" design for ladies' hosiery.

The Bley Patent 151,733 discloses in its drawing a lady's stocking incorporating a contrasting, contiguous heel, foot-sole and toe reinforcement area with a frame-like ornamentation line extending in uniformly spaced relation across the top of the heel reinforcement area, and thence downwardly along each side of this area to points substantially adjacent to the ankle bone.

The Bley 151,732 patent discloses the same type of reinforcement area but differs from the 151,733 design in that the frame-like ornamentation line is extended through both the heel and sole of the stockings to the toe reinforcement area, both producing a pattern of "picture frame" effect which is the outstanding characteristic of the Bley inventions. They seem to be separate embodiments of a single inventive conception. Both upon being placed on the market attracted an immediate and widespread popular appeal and found a ready sale wherever shown to the buying public.

The validity of these patents in suit has been passed upon and held valid, in the following cases: Sanson Hosiery Mills, Inc. v. Glen Raven Knitting Mills, D.C., 95 F.Supp. 134, and this action on appeal was affirmed by the Fourth Circuit in 189 F.2d 845. Sanson Hosiery Mills, Inc. v. S. H. Kress and Co., D.C., 109 F.Supp. 383; Sanson Hosiery Mills, Inc. v. Warren Knitting Mills, Inc., 95 U.S.P.Q. 138; subsequently affirmed by the court of appeals for the Third Circuit, 202 F.2d 395. Sharnay Hosiery Mills, Inc., v. Sanson Hosiery Mills, Inc., D.C., 109 F.Supp. 956.

It would appear that patent No. 151,-733, though not directly involved in the so called Glen-Raven case, was referred to as a companion patent in the opinion in the District Court and also in the opinion in the Court of Appeals.

In its original answer filed, the defendant denied validity, infringement, etc., and set up varied defenses, but subsequently filed an amended answer and through the admissions therein, conceded the validity of the Bley Patents in suit and set out in its brief "the only

issue between the parties and the only question to be decided by the court, is whether any of the defendant's stockings infringed either of the Bley patents. There is absolutely no issue as to the validity of the Bley patents."

With those admissions there is consequently only one issue of fact to be determined, and that in substance is,—are plaintiffs' patents infringed by these articles manufactured and sold by the defendant? It would seem from the evidence offered by defendant that it did not begin to manufacture the accused stockings until "after the Sanson patents came out", and that such came about following a showing of the Sanson Hosiery exhibits in New York in 1949 and later in early 1950, at another and similar showing of the exhibits by Sanson in that city. These showings were attended and the exhibits seen by William Nebel, Chairman of the Board of the defendant company and its founder and moving genius. On his return to Charlotte, to quote his testimony in answer to the question, "What did you do with respect to the Nebel Knitting Company manufacturing a framed heel after you came back from New York?" "We boys in the mill, my assistants, etc., discussed it, said why not put a frame around our patented stocking;" "You are referring to stocking marked defendant's exhibit # 5?" "You are right. After all, our heel, we have a patent to it,—two patents on it, and we just put a frame around it." A patent was later granted to defendant for said design.

The actual manufacture of this design and the others accused herein and which are alleged to infringe was begun immediately and large quantities of the finished product were being produced when this action was instituted.

Obviously the junior design patent which was issued to the defendant under which the accused stockings herein were manufactured, must yield domination to the prior Bley patents.

We then come to the real question in this trial,—the question of infringement. The law in such matters is certainly very clear and apparently is not even questioned by counsel. Its application is the crux of the matter.

The test of infringement in design patent cases is derived almost wholly from Gorham Manufacturing Co. v. White, 14 Wall. 511, 20 L.Ed. 731, wherein the Supreme Court stated:

"Plainly, it must be sameness of appearance and mere difference of lines in the drawing or sketch, a greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity."

"The purpose of the law must be effected if possible, but plainly, it cannot be if, while the general appearance of the design is preserved, minor differences of detail in the manner in which the appearance is produced, observable by experts, but not noticed by ordinary observers, by those who buy and use, are sufficient to relieve an imitating design from condemnation as an infringement.

"We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

A great deal of evidence was offered by the plaintiffs and the defendant and many opinions were obtained with respect to infringement or non-infringement. The exhibits were placed on artificial limbs and mounted on display racks in the court room so that comparisons could be made and differences pointed out. Varying degrees of similarity were referred to and various differences in manufacture were made, and likewise the opinions of the witnesses varied

with respect to the impressions made by the exhibits.

I viewed all of the exhibits very carefully during the week that the controversy was being heard; made a minute and definite study of them all, and though I do not classify myself as being one above mistake, still I have a definite opinion that the accused stockings infringed the Bley patents. That an exact appearance of one is so similar to another that one could be easily confused and a purchaser would not be aware of which manufactured object he was selecting.

Judge Hayes in his opinion in Sanson Hosiery Mills v. S. H. Kress and Co., D. C., 109 F.Supp. 383, 384, aptly stated: "Slight difference in features of a design are inadequate to remove the protection of the patent. * * * Actual comparison for minute inspection is not a fair test. * * * In such a situation, one seeking a stocking with a picture frame border would readily accept the imitation."

It would hardly be worthwhile to plow over again and again this same field of thought. The stockings of the defendant are all clearly indistinguishable from the stockings made under the Bley patents. Any differences as may exist are of degree only and are not substantial. Sanson Hosiery Mills, Inc. v. Glen Raven Knitting Mills, D.C., 95 F.Supp. 134.

The similarity of the handles of the silver in the Gorham case is not nearly so pronounced and certainly would be less confusing to the eye of an interested party than the appearance of the stockings in the exhibits in this cause.

I am, therefore, convinced that the public generally would be mislead since the infringement is so pronounced. A judgment will therefore be docketed in favor of the plaintiffs and against the defendant in line with these findings of facts and the conclusions of law.