GEORGE P. CONVERSE & CO., Inc. and Harry F. Waters, Plaintiffs,

v.

THOMAS J. LIPTON, Inc., Defendant.

Civ. A. No. 209.

United States District Court
D. New Jersey.

Feb. 28, 1957.

David M. Satz, Newark, N. J., for plaintiffs, John H. Glaccum, New York City, of counsel.

Dickson & Creighton, Donald R. Creighton, Hoboken, N. J., Campbell, Brumbaugh, Free & Graves, New York City, Dana M. Raymond, New York City, of counsel, for defendants.

Parnell & Krueger, Newark, N. J., for R. R. Williams, licensee and amicus curiae.

MODARELLI, District Judge.

Plaintiffs, George P. Converse & Co., Inc., a corporation of New York, and Harry F. Waters, a resident of that State, brought this suit against Thomas J. Lipton, Inc., a Delaware corporation with an established place of business in Hoboken, New Jersey, charging patent infringement under 35 U.S.C.A. §§ 67, 70 (now 35 U.S.C.A. §§ 281, 283, 284, 285).

Plaintiffs allege that on April 7, 1942, Patent No. 2,278,502 was issued to Harry F. Waters for a container and package. Waters asserts that Patent No. 2,262,-480 was also issued to him for a thermal sealing machine on November 11, 1941. Plaintiff, George P. Converse & Co., Inc., contracted with Waters for the exclusive right to grant licenses under said patents and to bring suit to enforce same. It is alleged that defendant has been infringing and continues to infringe the patents aforementioned "by making, using and selling containers embodying the invention set forth in said Letters Patent No. 2,278,502 and by manufacturing said containers on thermal sealing machines embodying the invention set forth in said Letters Patent No. 2,262,480." Plaintiffs seek injunctive relief, an accounting, damages, costs, disbursements of this action, and counsel fees.

In its answer, defendant denied the allegations of infringement. Defendant states that long prior to the commencement of this action, namely, during 1944, and again during 1949, plaintiff Waters, without asserting infringement by defendant of any specific patent or patents, offered to license defendant under the patents here in suit. Defendant asserts it declined those offers. Additional defenses include averments that Patent No. 2,278,502 is invalid for lack of invention and prior art, reference being made to eleven United States patents and two foreign patents. Defendant challenges the validity of Patent No. 2,262,480 as well on ground of prior art, citing five United States patents in corroboration. The two patents are also challenged upon the following grounds: (1) Of failure of invention within the meaning of the patent laws; (2) that the subject matter would have been obvious to a person having ordinary skill in the arts concerned; (3) that the specifications of each of the patents are not in such full, clear, concise and exact terms as to enable any person skilled in the art to make use of same. Lastly, it is said that plaintiffs are estopped to assert infringement because of laches.

By way of counterclaim, defendant petitions for a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202, adjudging the two patents and the claims thereunder invalid and void. Plaintiffs filed a reply denying the allegations of the counterclaim and praying its dismissal. The

action was tried by the court without a jury.

Attention is directed to Waters' '502, the patent for container and package to which plaintiffs have limited their infringement allegations to Claims 1, 4, 5, and 6.[1]

The patent was granted April 7, 1942, on application filed July 18, 1936. This patent teaches that a liquid-proof container, the walls of which consist of a double-thickness paper or foil, may be made in the form of a tube with an edge double-folded back upon itself and heat sealed. The object of the invention is to provide an improved seam construction by using a liquid-proof surface of the container as part of the seam. In the case of thermoplastic layer against thermoplastic layer, an interior surface which is contiguous or integral in nature can be produced. The four claims in issue reveal in large measure the scope of the invention.

It is apparent from a study of this patent that both the specifications and its claims are directed to the invention of a type of seam for a plural-ply envelope which would be liquid-proof. The question which arises out of the evidence is whether or not this purported improvement in structure and seams was sufficiently novel to constitute such an advance in the art as to be an invention. The problem which the '502 patent sought to solve was the elimination of the leakage from the overlap seam of conventional tubing caused by a capillary flow known technically as "wicking." As noted above, the Waters' patent proposed a folded-over face-to-face seam, various views of which are diagrammed in Figures 1 through 4 of the patent. The specifications do not disclose that the thermoplastic coating or lamination of the packaging material must constitute a self-sustaining film, nor does it reveal any optimum limits regarding the thickness of the inner coating or lamination of the material.[2]

The idea of a folded-over face-to-face seam is taught in Milmoe Patent No. 1,-793,710, granted February 24, 1931. This patent relates to an invention of a package and process for forming the same. The process entails a duofold wrapping commonly consisting of an inner layer and an outer layer. Instead of the conventional overlapping edges, the invention draws the free edges away from the package and folds them back upon the outer surface thereof. By this method, heat may easily be applied to seal the free edges, creating an inner surface integral or continuous in nature to protect the contents from contact with any outer layer of the wrapping.

1. 1. A plural ply open-mouthed bag comprising an inner ply of heat-fusible material and an outer ply of other flexible material, said inner ply having an interior of integral nature with two of its seams formed by fusion, at least one of said fused seams being transverse the bag and being faced on both sides by the outer ply secured thereto.

4. A plural ply open-mouthed bag comprising an inner ply of heat fusible material and an outer ply of other flexible material, said inner ply having an interior of integral nature with all of its seams formed by fusion, at least one of said fused seams extending longitudinally of the bag and formed by face to face fusion of marginal regions of the inner surface of said inner ply, and being faced on both sides by the outer ply secured thereto.

5. A plural ply open-mouthed bag comprising an inner ply of heat fusible material and an outer ply of other flexible material, said inner ply having an interior of integral nature with all of its seams formed by fusion, all of said fused seams being formed by face to face fusion of marginal regions of the inner surface of said inner ply, and being faced on both sides by the outer ply secured thereto.

6. A plural ply open-mouthed bag comprising an inner ply of heat fusible material and an outer ply of other flex'ble material, said inner ply having an interior of integral nature with all of its seams formed by fusion, at least one of said fused seams being formed by face to face fusion of marginal regions of the inner surface of said inner ply and being faced on both sides by the outer ply being secured thereto.

2. Waters, in rebuttal on cross-examination, conceded the absence of these elements from his specifications (Transcript, pp. 186–187).

Likewise Becker Patent No. 1,953,097, issued April 3, 1934, also relates to a method of packaging articles in moisture-proof, air-tight containers. The process here employed a wrapper with a fusible coating thereon, the flattened edges of which are heat sealed and then bent over and against the body portion. Again, an inner surface integral in nature is formed to protect the contents. The invention specifically contemplated "various modifications and applications * * particularly as to the articles packaged, the exact wrapping material employed, the specific apparatus used, and the order and number of the steps, * * * without departing from the spirit of the invention or the scope of the appended claims."

■ The court is impressed that results substantially similar to those discussed above were achieved by inventions ascribed to several other earlier inventors. Suffice to mention the work of Smith Patent No. 1,754,839, granted April 15, 1930; Peterson Patent Nos. 1,-137,280 and 1,217,818, issued April 27, 1915, and February 27, 1917, respectively. The folding and heat-sealing methods explained in the foregoing patents must be considered together with the complementary patents relating to wrapping materials compatible to such methods. Reference is made to Calvert Patent No. 1,989,632, issued January 29, 1935 (transparent film); Calvert Patent No. 2,273,560, issued February 17, 1942 (method of coating); Reynolds Patent No. 2,003,494, issued June 4, 1935 (laminated material).

■ The Waters' Patent '502 has been litigated in the United States Court of Claims in a suit against the Government. The Commissioner appointed by the Court of Claims reported to that Court on February 21, 1956, that Claims 5 and 6 are invalid over prior art. Harry F. Waters v. The United States, H. Waters, Inc., Intervenor, No. 49,293 (Ct.Cl.1956). As of this date this report has not been confirmed. These two claims are pressed by plaintiffs in the case at bar. In a subsequent action, this patent was litigated in George P. Converse & Co., Inc., v. Polaroid Corporation, D.C.Mass.1956, 141 F.Supp. 631. It was there determined that the patent was invalid for lack of invention and prior art. An appeal from this judgment is pending. After having independently judged the issue of validity from the pleadings and evidence, this court is impelled to announce a similar conclusion on Claims 1, 4, 5, and 6 of Waters' Patent '502. Both structurally and functionally the elements of '502 have been found, by searching examination, to be combined in several earlier patents. Indeed, a patent of Waters' not in issue, takes note of the fact that the type of package used by Lipton with face-to-face seam was "well known" as early as 1935.[3] Authorities agree that that which is obvious to persons skilled in the art, or involves mere substitution of materials, or the application of an old process to a new but analogous use is not invention. Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 1934, 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Concrete Appliances Co. v. Gomery, 1925, 269 U.S. 177, 46 S.Ct. 42, 70 L. Ed. 222; Hollister v. Benedict & Burnham Mfg. Co., 1885, 113 U.S. 59, 5 S.Ct. 717, 28 L.Ed. 901.

As to the factor of commercial success, this is not a close or doubtful case which would admit that factor as determinative of the holding herein. The Supreme Court has cautioned that commercial success is an "unsafe criterion" of inven-

---

3. Letters Patent No. 2,125,758, issued to Harry F. Waters August 2, 1938, was filed May 8, 1935. The specification of this patent for a machine for manufacturing bags, contains the following recitation: "In Figs. 1 and 2 there is set forth the essential portions of a well known type: of bag or envelope forming machine in which a strip of material 10 and a strip of material 11 are superimposed and passed between feed rolls 12. Either strip may comprise fusible material or may comprise a sheet of base material coated with a fusible substance, or may be preprinted in defined areas with strips 13 of fusible substance." Page 2, col. 1, lines 1–9.

tion. McClain v. Ortmayer, 1891, 141 U.S. 419, 428, 12 S.Ct. 76, 35 L.Ed. 800. Accord, Paramount Publix Corp. v. American Tri-Ergon Corp., 1935, 294 U. S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Kester Solder Co. v. Berry Solder Co., D.C. S.D.N.Y.1936, 14 F.Supp. 863, affirmed 2 Cir., 1937, 88 F.2d 1012. In the cases dealing with patents of designs as in textiles, commercial success has been accorded special weight. R. M. Palmer Co. v. Luden's, Inc., 3 Cir., 1956, 236 F.2d 496; Sanson Hosiery Mills, Inc., v. Warren Knitting Mills, Inc., 3 Cir., 1953, 202 F.2d 395, 396; Glen Raven Knitting Mills, Inc., v. Sanson Hosiery Mills, Inc., 4 Cir., 1951, 189 F.2d 845, 853; J. R. Wood & Sons, Inc., v. Abelson's, Inc., 3 Cir., 1934, 74 F.2d 895. But even in such design patents, the patent must be the product of the inventive faculty, mere wide public acceptance being insufficient to establish invention.

The commercial success of the packaging industry has been phenomenal in the United States. It is claimed that it is now a $12,000,000,000 business as packages become less a means of transporting goods home and more of an inducement for the purchaser to buy what is inside. It has revolutionized marketing.

The second patent in suit, Waters' '480, relates to a thermal sealing apparatus and method for making a package or container from thermoplastic material (such as "Pliofilm") or other material with adhesive at the place of seaming.

This patent, applied for July 20, 1949, and granted November 11, 1941, discloses a mechanism and method for making from folded duofold layers of flexible thermoplastic material an open-mouth bag such that the three closed edges consist of a continuous L-shaped seal plus the fold opposite one of the sealed edges. A completed bag may be made by a single application of the sealing bar at right angles to the folded side opposite. In this suit, plaintiffs only rely upon Claims 4 and 7 of this patent which are set out in the margin.[4]

By contrast with Waters' '480, the machines used by Lipton employ a sealing bar approximately in the shape of an inverted T. The upright or shaft of the bar seals the rear side edge of one package and, simultaneously, the forward side edge of another adjoining package, as well as little more than half of the base or folded web of both packages with the horizontal base of the inverted T. It must be made clear that it requires two applications of the sealing bar to produce a completed open mouth container. Whereas the Waters' method results in a bag closed at one end by means of a fold line, the Lipton mechanism seals the folded base as well as the longitudinal sides.

Waters' '480 discloses a sealing bar with a pressure equalizing pad attached to the frame opposite one of the legs of the bar. The function of this pad is to counteract any tendency of the slide to tilt under pressure during operation. The machine employed by Lipton for

---

4. 4. A thermal sealing machine comprising a reciprocatory head, a platen or backing member, a substantially L-shaped bar carried by said head and facing said platen and having a continuous work-contacting face, means for heating said bar, means for reciprocating said head so that heat may be applied along an L-shaped path running along one margin and beyond the fold of a folded sheet and along another margin opposite the fold to thereby cause thermoplastic material on the folded sheet to fuse and to form a continuous seam along two margins which together with the fold forms a bag open at one end, and a work-contacting pad on said head opposite one of the legs of said L-shaped bar acting to maintain the head and the bar carried thereby level under working pressure.

7. The method of making bags which comprises folding a sheet of flexible heat-sealable material along a single line to bring its longitudinal and its transverse marginal portions into contacting position, and then simultaneously applying heat and pressure to a continuous L-shaped marginal strip of said folded sheet extending in the said longitudinal and in one of said transverse contacting marginal portions whereby said folded sheet will be converted into an open-mouth flattened bag consisting of only two layers of material closed at one edge by means of a fold line and at two edges by means of a continuous L-shaped seam.

manufacturing the chicken noodle soup package does not have any such pad corresponding to the pressure equalizing pad described in the patent in question.

A matter of first concern is to determine whether the thermal sealing machine with the L-shaped bar is an "invention" within the meaning of § 103 of the Patent Act, or is merely an innovation "obvious * * * to a person having ordinary skill in the art."

 The standard of invention is that enunciated in Hotchkiss v. Greenwood, 1850, 11 How. 248, 267, 13 L.Ed. 683, wherein the Supreme Court noted that "unless more ingenuity and skill in applying the old method" were necessary "than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitutes essential elements of every invention." The Court has never formally departed from this criterion, nor has it ever substituted any other definite test. Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 90, 62 S.Ct. 37, 86 L.Ed. 58. See also interpretation of the Third Circuit in R. M. Palmer Co. v. Luden's, Inc., supra; Newburgh Moire Co., Inc., v. Superior Moire Co., Inc., 1956, 237 F.2d 283. The term "invention" is undoubtedly one of the most baffling in the judicial lexicon.

What did the patentee regard as his invention? The patent speaks of a thermal sealing machine and improvements therein. More specifically, the patent teaches a special machine for making bags. Quoting from the patent itself:

> "It provides a machine which when used in a particular manner upon a folded sheet of suitable material forms at one operation, a continuous seam at the marginal portions of the folded sheet along one

side and one end, thereby, in conjunction with the fold, producing a bag closed at three sides and open at one end." Page 1, col. 1, lines 4–11.

Gaubert Patent No. 2,094,594, issued October 5, 1937, realized the advantages of converting a sheet into a bag by means of a single sealing application of a heater. The file wrapper of the patent in suit reveals that plaintiff Waters, while conceding that Gaubert disclosed these advantages, sought to convince the Patent Office that the structure of Gaubert's heat sealing member and the manner of its application on the folded material were such as to prevent or at least make it difficult to obtain a completely satisfactory fluid-tight and gas-tight product. This may well be open to question. Gaubert taught a bag-making machine which takes the end portion of a folded tubular structure extending beyond the mandrel and folds it. A T-shaped heater is applied, forming a longitudinal and transverse heat-sealed seam. The bottom and the side of the material may be sealed simultaneously, i. e., with one motion of the heater. It is debatable whether or not the number of layers of material which varies in different regions of the bag made on such a machine is such a controlling factor to nullify the impact which Gaubert had upon the art under review. Waters conceded in his testimony that the serviceability of most seams is relative.[5]

It appears an obvious expedient to make a heating member in several shapes, L, T, or adaptations of those configurations, each of which would accomplish desirable results. In their attempts to discount the contributions made by Moore Patent No. 2,190,475, Salfisberg Patents Nos. 2,140,117 and 2,175,031, and Gutberlet Patent No. 1,877,728, plaintiffs invariably return to the con-

---

5. Mr. Waters in rebuttal:

"Q. Now, will you take this book of patents and refer to the first patent, Milmoe. A. Yes.

"Q. Does that patent show a face to face seam? A. Well, it is a question whether it is seamed or not. It shows

them together. How good a seam it is, is questionable. Most of the seams are relative. It gets to a point where they are perfect and where they are not. This primarily is what is considered in the industry as a wax wrapper. (Transcript, pp. 158–159).

tention that those references fail to produce a suitable container by converting a folded sheet into a flattened envelope *in a single heat-sealing operation.* The repetition of this refrain supports the conclusion that the inventive feature claimed for Waters' '480 derives from the methodology of producing fluid-tight bags from a folded sheet material *in a single heat-sealing operation.* Patentee Waters testified to this conclusion.[6] The deliberate L-shaped path of the heating bar was designed to provide a seam completely free from weakened doubly-heated regions. The merit of manufacturing bags without repeated applications of heat sealing pressure was emphasized by Waters in prosecuting his application with the Patent Office as the file wrapper discloses. This feature was also noted in the description of the patent found in the official journal of the Patent Office. 532 OG 425 (November 1941).

■ Having analyzed the problem thus far the court, while entertaining reservations, is not prepared to declare Waters' '480 invalid. Taken together, the elements of a fold, an L-shaped seal along one margin beyond the fold and along another margin opposite the fold combined to form a completed bag in one application of the sealing bar evidence inventive faculty. Moreover, machines incorporating the invention have had marked commercial success. Lipton itself has purchased a considerable number of these machines and is using them to manufacture its tea bags under license.[7] These machines are not the subject of suit.

There is no doubt, however, that there has been no infringement of this patent by the defendant in packaging its soups

and desserts. Claim 4 describes the parts of a thermal sealing machine:

"* * * means for heating said bar, means for reciprocating said head so that heat may be applied along an L-shaped path running along one margin and beyond the fold of a folded sheet and along another margin opposite the fold to thereby cause thermoplastic material on the folded sheet to fuse and to form a continuous seam along two margins which together with the fold forms a bag open at one end * * *."

It is evident that the fold, constituting one side of the package made by the Waters' machine, is a very important element in the manufacturing process. In fact, the package could not be made without such a fold. The fold is indispensably essential to the formation of the finished product.

By contrast, the Lipton machine seals the Lipton package on all three sides. There is no exposed fold at all in the finished product. As the stock is pulled through the Lipton machine the material is folded, but the sealing bar strikes that fold not once but twice along portions of the bottom of the package. Mere inspection of the finished product, together with dissection of the exhibits to note details, confirms the conclusion that Lipton does not manufacture a bag having two edges formed by a continuous L-shaped seam. The fold of the Lipton bag is at the bottom while the material is passing through the machine. We do not find a bag which has two edges of the bag formed by a continuous L-shaped seam, and the other edge being a fold opposite one of the edges such as is taught by Claim 7 of Waters' '480. Mr. Layton, a former production department

---

6. Mr. Waters direct:
 "Q. And what was the purpose of that patent? A. The purpose of that patent was to get two sealing areas sealed in a single stroke, or to try to complete a bag, or an envelope, in one single operation of a sealing machine rather than having to go through two operations to form an envelope, so that a machine by

a single operation would produce an envelope. (Transcript, p. 20). See also Transcript, p. 172.

7. Plaintiffs' Exhibit P-20 sets forth a list of the names of purchasers in a report dated November 1, 1949. Of 27 infusion bag machines sold, 15 were purchased by Thomas J. Lipton.

foreman of Lipton, testified on behalf of the plaintiffs. This witness was very knowledgeable on the type of containers manufactured, and the machines used at defendant's plant, a knowledge acquired from direct experience at the plant. His testimony is entitled to considerable weight. He conceded that the structure of an L-shaped seal along two edges and a fold for a third edge was not the Lipton chicken noodle soup bag.[8]

Plaintiffs contend that the inverted T-shaped sealing bar of the Lipton mechanism is equivalent to the L-shaped sealing bar of Waters' '480 set back-to-back. They conclude that Claims 4 and 7 "are not so limited that they must be done in a single operation."[9] This argument runs directly counter to the invention claimed by Waters. As was made painstakingly clear in the paragraphs above, the feature of forming an open-mouth bag in a single application of the sealing unit was the very *lietmotif* of the patent under review. If this conclusion is erroneous then the claims in issue would raise a question under § 112 of the Patent Code.[10] See Guide v. Desperak, D.C.S.D.N.Y.1956, 144 F.Supp. 182. The disputed claims cannot be projected beyond the context of the invention itself and must be read in the light of the specifications and drawings. See United Carbon Co. v. Binney & Smith Co., 1942, 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S. Ct. 662, 82 L.Ed. 1008; Evans v. Eaton, 1822, 7 Wheat. 356, 430, 431, 5 L.Ed. 472. Plaintiffs should not be heard to retreat from the most unique feature of the invention, one which the patentee used so successfully in deflecting the impact of prior patents which the Patent Office researchers submitted in challenge to his application.[11]

In conclusion, it is determined that Waters' '480 is valid and Claims 4 and 7 not infringed by the defendant because the claims do not read upon the accused apparatus or method.

This is not such an exceptional case such as to warrant the awarding of attorney fees. 35 U.S.C.A. § 285.

The foregoing opinion shall constitute findings of fact and conclusions of law as required by Rule 52, Fed.Rules Civ.Proc. 28 U.S.C.A.

An order may be submitted in conformity with the opinion herein expressed.

---

8. Cross of Mr. Layton:
 "Q. Do you understand that you would come up with a three-sided bag, openmouthed, if you had a continuous L-shaped seal along two edges, and a fold to form a third edge; that is all I am asking, not what machine. A. I understand that.
 "Q. Now, my question is, is the Lipton chicken noodle soup bag, that bag, does it have the sealed edges and fold related in that manner? A. No. (Transcript, p. 43)

9. Transcript, pp. 196–197.

10. Patent Code § 112, in part provides:
 "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

11. Plaintiffs' proposed findings of fact also emphasize the feature of *simultaneous* heat sealing of two edges. Proposed Finding No. 22 reads: "None of the prior art patents cited against the Waters patent '480' shows a machine for heat sealing two edges simultaneously, the Gobart [Gaubert] '594' patent showing a T-bar to prevent the sides of the bag from being sealed to each other when the seam is formed (Tr. P. 170) and the Gutberlet '728' patent merely showing a machine for preparing blanks for pyraline envelopes to heat the lines of flexion so that the material may be bent into the form desired (Tr. P. 145)."