**The J. R. CLARK COMPANY,**
**Appellant,**

v.

**MURRAY METAL PRODUCTS COM-**
**PANY, Inc., Appellee.**

**MURRAY METAL PRODUCTS COM-**
**PANY, Inc., Appellant,**

v.

**The J. R. CLARK COMPANY,**
**Appellee.**
**No. 14836.**

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1955.

---

Andrew E. Carlsen, Douglas L. Carlsen, Minneapolis, Minn., James F. Weiler, Houston, Tex. (Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel), for appellant.

Joe E. Edwards, B. R. Pravel, Houston, Tex. (Vinson, Elkins, Weems & Searls, J. V. Martin, Houston, Tex., of counsel), for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment of the district court holding appellant's com-

bination patent No. 2,276,981, for a "ventilating metal ironing table top" invalid and not infringed, and that appellant's device had acquired no secondary meaning which would justify granting any broad relief against appellee for unfair competition, though it was entitled to limited injunctive relief prohibiting appellee's use of advertising confusingly similar to that of appellant. The main appeal is from the trial court's holding as to invalidity, noninfringement, and lack of unfair competition in appellee's sale of the accused ironing table, while appellee has cross-appealed from the holding that its advertisement is so confusingly similar to that of appellant as to justify injunctive relief, as well as its allocation of one-fourth costs against appellee and refusal to award it attorney's fees.

■ Appellant is a Minnesota corporation organized in 1889, and is extensively engaged in the manufacture and sale of ironing tables. Appellee is a Texas corporation which, though never having manufactured the accused table structure, has sold the device for its manufacturer, Smithville Metal Products Company of Smithville, Texas, which company is not a party to this suit.[1]

The patent in suit was issued March 17, 1942 to appellant, as assignee from the inventor-applicant, Edward T. John. Claim 1 thereof, which is the only claim in issue, reads as follows:

"1. An ironing table top, com-prising a framework formed of longitudinal and transverse members and a peripheral frame member united with the longitudinal and transverse members, and a surface member consisting of a single sheet of flat expanded metal resting upon the longitudinal frame members and having edges thereof secured to the peripheral member."

■ On the initial issue of Claim 1's validity, appellant insists that its use of flat expanded metal[2] as an ironing table top involved patentable invention because the prior art reveals that no one, prior to the advent of its patent, had recognized that this type metal had inherent properties and characteristics which peculiarly adapted it for unusual efficiency as an ironing table top, viz.: the required strength to support an iron during the ironing operation and still provide the desirable smooth surface and open area for ventilation and steam escape, as well as the desirable characteristic of absorbing the high temperatures to which an ironing table top is subjected in localized areas without bulging, buckling or undergoing other structural distortion. Appellant further insists that Claim 1 is valid because it embodies an invention which remedied many problems theretofore unsolved by the prior art in the trade; that its validity is further reinforced by its due issuance by the Patent Office after consideration of all pertinent prior art references, as well as by its extensive commercial success and the recognition of

---

1. The failure to join the manufacturer of the accused device as a party defendant in this suit is not material, in view of appellant's option under 35 U.S.C. § 271 to charge with infringement "whoever without authority *makes, uses or sells* any patented invention," etc. (Emphasis ours.)

2. Flat expanded metal is defined in appellant's brief, "as a sheet of metal that has been slit, stretched and flattened in such a manner that it is left with alternately staggered rows of profusely distributed diamond-shaped openings, presenting substantial free open area, without remov-ing material from the sheet, and the stretching and flattening operations are such as to create tension within the material giving it more supporting strength than would be present in a sheet of metal having a corresponding amount of free open area but in which the openings are formed by punching or otherwise removing material from the sheet." Flat expanded metal is not only fire proof, but has a smooth surface and tension properties resulting from the cold stretching process by which it is made, which increases its strength. It is also of light weight and comparatively inexpensive to make.

appellant's statutory monopoly by its largest competitors in the field; that the structural variations in appellee's table are insufficient to avoid infringement under the doctrine of equivalents; and finally, that the testimony reveals appellant's table has acquired such secondary meaning and significance in the trade as properly entitled it to prevail also on its charge of unfair competition.

Appellee insists that the trial court properly held Claim 1 invalid because, when viewed in the light of more pertinent prior art references not considered by the Patent Office before issuance of the patent, the mere substitution of flat expanded metal for other ironing table top materials already known did not involve patentable novelty or invention, but was only a logical extension of prior existing knowledge readily apparent to any skilled artisan in the trade, particularly since its use as a table top was suggested in numerous trade circulars and publications issued prior to the patent in suit; alternatively, and solely in the event this Court considers Claim 1 valid, that appellee's ironing table exhibits substantial structural differences sufficient to avoid infringement; that appellant is entitled to no relief on its theory of unfair competition because of its own acts in permitting the patented structure to be sold under different names and trade-marks through various other outlets, which fact effectively refutes the contention that its product had become so identified with appellant as to acquire secondary significance in the trade.

The district court found, 114 F.Supp. 224, that no patentable novelty or invention existed in appellant's mere use of flat expanded metal for an ironing table top; that such metal and its inherently advantageous properties were well known prior to the advent of the patent in suit; specifically, that the use of woven wire, perforated metal, and expanded metal lath for ironing table tops, as suggested by the prior art, reveals them as fully equivalent materials to flat expanded metal, and the mere substitution of the latter material for the former did not constitute patentable invention, but was "a logical step for a skilled man designing an ironing table and involved only engineering or mechanical skill"; that, irrespective of its finding of invalidity, appellee's accused device did not infringe the patent in suit because, whereas the disclosure of Claim 1 is expressly restricted to "a framework including more than one longitudinal member which is united to the peripheral frame member", appellee's table had a different framework, in that it exhibits "only a single partial longitudinal member";[3] finally, that appellant "has not established that the appearance of its ironing table top has acquired a secondary meaning", but since "the general appearance and arrangement, as well as certain descriptive phases in defendant's advertisement, are confusingly similar to many of plaintiff's advertisements," it created "the possibility that plaintiff's prospective purchasers might be misled, and * * * the likelihood of confusion to the public," so as to warrant the court's grant of limited injunctive relief to restrain appellee's further use of advertising "confusingly similar" to that adopted by appellant.

On the primary issue of Claim 1's validity, appellant concedes in brief that we are confronted with the comparatively simple proposition of "whether or not the use of flat expanded metal for this particular purpose (ironing board top) involved invention". It further con-

3. In addition to its holding that appellee's table did not infringe upon the express language of the Claim, the Trial Court further noted that "Claim 1 of the patent in suit is not entitled to any range of equivalency such as would bring the defendant's structure within the terms of such a claim," citing this Court's decisions in Price-Trawick v. Gas Lift Corp., 5 Cir., 101 F.2d 134; Hughes v. Magnolia Petroleum Co., 5 Cir., 88 F.2d 817; Texas Rubber & Specialty Corp. v. D. & M. Machine Works, 5 Cir., 81 F.2d 206.

cedes that flat expanded metal, as such, did not originate with the patentee, John, but that this type metal, as well as ironing board frames, were old long before issuance of the patent in suit.[4] Furthermore, appellant does not deny "that the qualities and characteristics of flat expanded metal that enabled it to so effectively solve these problems[5] are 'inherent'" in the material itself. Appellant insists, however, that such concessions are immaterial and in no way affect the validity of its patentee's invention because:

"In not one of these earlier disclosures will be found the remotest suggestion of John's discovery that flat expanded metal will absorb or dissipate heat without buckling; in not one of them is there even a hint that flat expanded metal has properties that peculiarly adapt the material for an ironing table top; nowhere will be found the problems of localized heat application, the necessity for maintaining a perfectly flat ironing surface condition, the problem of surface condensation to prevent rotting, or the problem of adequate open ventilating space to permit steam escape, while also maintaining adequate smoothness of surface and strength to effect efficient operation.

\* \* \* \* \*

"The one and only person to dis-

cover that flat expanded metal had these latent or inherent characteristics, so badly needed in the ironing table art, was Edward T. John, the inventor in the patent in suit, and if this Court so finds, as it should, then the claim in issue should be sustained."

With specific reference to the advantageous "latent or inherent characteristics" of flat expanded metal for use as an ironing table top, appellant further insists:

"Its greatest advantages, however, reside in the two facts (1) that it has a free open area of about sixty per cent so as to provide ample ventilation for the downward escape of steam without any condensation forming on its upper surface, and (2) that it had the very important function or property of being able to absorb and/or dissipate the locally applied heat without bulging, buckling, or otherwise distorting the plane or flat surface condition of the sheet. These were essentially the new advantages, functions and results that were found to have so much merit and great value to the Clark Company, and which were recognized as an inventive contribution by the Patent Office."

We have carefully considered each of appellant's contentions in the light of the prior art, the physical exhibits, and

4. In brief, appellant admits that, "There is nothing in the John patent in suit, nor in its file wrapper, nor in this entire record, even remotely suggesting that John invented flat expanded metal as such. It is disclosed for use as shelving in the earlier patents to Clark, 1,259,210 of 1918, Griffith, 1,961,144 of 1934, and Mack, 2,141,400 of 1938; and for use as grills and partitions in Miller, 2,038,306 of 1936, and Otte, 2,018,085 of 1935. Flat expanded metal was also freely available in 1935 or 1936 \* \* \*, and John himself testified that he had seen and knew about flat expanded metal prior to his invention."

5. The particular problems resulting from the use of solid or perforated metal ironing table tops, as disclosed by the prior

art, were clearly demonstrated by counsel for appellant upon the oral argument. Their demonstration revealed that, when a sufficiently heated iron is applied to an ironing pad covering such solid or perforated metal top, the top will buckle or bulge in the particular spot to which the iron is applied. Obviously, this buckling or distortion disrupted that flat, smooth surface needed for an efficient ironing operation. In addition, the briefs reveal that other problems were encountered to a greater or lesser degree in the use of wooden and other type metal ironing tables revealed by the prior art, such as warping or cracking, inadequate ventilation to provide steam escape, lack of required strength, undesirably rough surface, higher costs of manufacture, etc.

the record testimony; yet we remain thoroughly convinced that none of them may be sustained.

Whether, assuming Claim 1's validity, appellant might be entitled to prevail on the closer issue of infringement,[6] we think it unnecessary for us to decide. Expressly pretermitting any holding upon that issue, we prefer to predicate our decision on what appears to us more solid ground, i. e. the proven invalidity of the patent in suit, both as anticipated in fact by the prior art, and for its failure, as a matter of law, to disclose that degree of novelty now required in order to vest a patentee with the statutory monopoly which an enforceable patent grants. See Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 206 F.2d 772, 776; Robinson v. Digaetano, 5 Cir., 212 F.2d 1. Considering appellant's contentions as to validity in the light of its own admissions, as well as against the background of the prior patents cited, the patented and accused structures, and the other evidence, we have no doubt the Trial Court correctly held that, even taking into consideration the fact that we are viewing John's alleged contribution in the light of hindsight, the prior art cited, and particularly the trade circulars and publications relied upon,[7] at least inferentially suggested the substitution of flat expanded metal in ironing board tops as a "logical extension" of prior knowledge, which use as the Trial Court noted, should have been reasonably apparent to "a skilled man assigned to the task of designing a ventilated top ironing table."

Appellant's insistence that the failure of other experts to use flat expanded metal for such purpose prior to issuance of the John patent in 1942 is practically conclusive of the validity of John's contribution, is not sound, particularly in the light of the showing that such material, with all its inherent advantages for such use, was not developed and marketed commercially, or extensively advertised, until about 1935 or 1936. Its further insistence that the presumption of validity of the patent in suit is increased by several factors, i. e. issuance by the Patent Office after consideration of the most pertinent prior art,[8] commercial success, and recognition by the trade, is also ineffective to establish validity here. We think it too well settled to require citation of authority that, while all such facts and circumstances may properly be relied upon to reinforce ultimate conclusions as to validity in close or doubtful cases, they are never in themselves determinative, either singly or in the aggregate,

6. Assuming Claim 1's validity, we think it might reasonably be urged that the structural differences relied upon by the Trial Court and appellee between appellant's and appellee's devices are insufficient to avoid infringement under a reasonable application of the doctrine of equivalents. See Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 206 F.2d 772, 778.

7. The advertising circulars and publications cited, which were not considered by the Patent Office, suggested uses for flat expanded metal in lieu of woven wire, perforated metal, etc., as follows:

"If the needs of your business require woven *wire mesh, perforated metal* or wire rod panels for manufacturing and maintenance uses, you can profit by the convenience and economy of Red Top Econo Mesh. (Emphasis added.)

"Whether or not an open mesh material is used in the product you make, examine these Shelf-X samples * * * Larger samples for experimental purposes will be gladly furnished without cost as well as an engineering design service. Let us show you how you can do a better job with Shelf-X.

\* \* \* \* \* \* \* \*

"Shelf-X makes a better product where a rigid, open mesh material is required * * * Easy to fabricate * * * Flat smooth surface * * * Attractive design * * * Economical * * *."

8. Appellee forcibly contends, and the Trial Court found, that this claimed presumption of the patent's validity arising from its due issuance by the Patent Office is here upset by the failure of the Patent Office to consider the most pertinent prior art references. See Jacuzzi Brothers, Inc., v. Berkeley Pump Co., 9 Cir., 191 F.2d 632, and Jeoffroy Mfg., Inc., v. Graham, supra, note 6.

nor may they serve independently to breathe life into a patent which, like Claim 1 here, is otherwise basically lacking in patentable invention. Moreover, like the district court, we reject appellant's assertion that, "in dissipating localized heat without distortion, the flat expanded metal performs an additional and different function in the combination claimed than it had ever performed out of it." We think this latter contention is substantially refuted by testimony revealing that the patentee, John, as an engineer, was bound to admit his knowledge of the familiar principle "that metal expands when it is heated", and logically must have known that any available metal with open spaces or holes in it which provided room for heat expansion, as well as the other claimed advantage of added ventilation for steam escape, would not be subject to an inordinate amount of buckling or other heat distortion. In fact, John's own testimony fairly shows that his awareness of this problem prompted his prior use of woven wire screen to prevent buckling, and that his subsequent and allegedly novel inventive contribution in using flat expanded metal in place of woven wire mesh screen was

just "a logical extension of the same idea."[9] It further seems to us that, irrespective of whether the Trial Court correctly viewed the prior art and John's earlier filed patent No. 2,320,607 as establishing "that woven wire, expanded metal lath and flat expanded metal are fully equivalent materials" for ironing table top use, the evidence does fairly support appellee's assertion that flat expanded metal, like any other metal with openings in its surface known to the prior art, has certain inherent advantages for ventilation and heat resistant purposes, the effectiveness of which varies directly according to the extent of open area provided and the degree of heat applied. While John may have been the first to apply these known variable factors to the production of a more efficient ironing table top made of flat expanded metal, we agree with appellee and the District Court that his successful experimentation is more appropriately characterized as skilled artisanship of the trade, rather than true invention. Without belaboring further facts and principles which we think clearly support the Trial Court's holding,[10] we think its ultimate conclusion as to the invalidity of Claim 1 of the

---

9. The patentee, John, testified:

"Q. And then you thought of the woven wire screen, in order to prevent that buckling? A. To prevent the buckling and to provide ventilation from the lower side.

"Q. Now, did that woven wire screen prevent buckling and provide ventilation? A. I believe it did to some extent.

"Q. Now, just when did you think about using flat expanded metal in place of the woven wire screen? A. I couldn't give you an exact date.

"Q. Do you remember any of the circumstances that caused you to think about that? A. Well, we wanted a smooth top, of course, it was just more or less a logical extension of the same idea of providing a well ventilated non-buckling practical ironing table top, built entirely of metal.

"Q. At that time had you seen expanded metal? A. Oh, yes."

10. In holding Claim 1 invalid as anticipated by the prior art, we think the Trial Court properly relied upon the following

patents and publications: U. S. patent No. 1,769,010—Adams—July 1, 1930; U. S. patent No. 1,885,211—Adams—November 1, 1932; U. S. patent No. 2,152,-618—Anderson—March 28, 1939; U. S. patent No. 508,595—Barrett—November 14, 1893; U. S. patent No. 2,215,918—Fay—September 24, 1940; U. S. patent No. 1,682,903—Hadaway—September 4, 1928; U. S. patent No. 2,220,962—Kingman—November 12, 1940; U. S. patent No. 1,154,726—Ramlow—September 28, 1915; British patent No. 4,690—von Nawrocki—October 2, 1883; U. S. patent No. 2,110,008—Wardwell—March 1, 1938; "Shelf-X—Flat Surfaced Expanded Steel Sheets", published by U. S. Gypsum, November 22, 1935; "Shelf-X—Effects Economies and Important Product Improvements", published by U. S. Gypsum Company, November 22, 1935; "The Red Top Econo Mesh Book", published by U. S. Gypsum Company, January 8, 1936; "Expanded Metal Shelves", published by the Consolidated Expanded Metal Companies, Wheeling, West Vir-

John patent must be sustained. Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra; Sinclair & Carroll Company v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; Texas-Miller Hat Corp. v. Switzer Bros., Inc., 5 Cir., 201 F.2d 824, 825; A. O. Smith Corp. v. Affiliated Gas Equipment, Inc., 5 Cir., 205 F.2d 654; Johnston Formation Testing Corp. v. Halliburton, 5 Cir., 88 F.2d 270, 272; Richie v. Lewis-Browning Mfg. Co., Inc., 5 Cir., 196 F.2d 434; see also General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43.

■ We further agree with the appellee and district court that appellant failed to prove it had acquired any such secondary meaning from the alleged distinctive appearance of its ironing table as would justify any broad injunctive relief based on its charge of unfair competition, both for the reason that it has permitted its device to be sold under other trade-names and trade-marks and through other outlets to such an extent that it could not have been associated exclusively in the public mind with appellant as the source, and for the additional reason that the novel appearance of the flat expanded metal top of appellant's ironing table, being functional and a result of a well known manufacturing process, may not acquire any secondary meaning which would render it subject to exclusive appropriation by anyone in the trade. See Application of Hillerich & Bradsby Co., 204 F.2d 287, 40 C.C.P.A., Patents, 990; Mastercrafters Clock & Radio Co. v. Vacheron Watches, Inc., D.C.N.Y., 119 F.Supp. 209; Lektro-Shave Corp. v. General Shaver Corporation, 2 Cir., 92 F.2d 435; Smith, Kline & French Laboratories v. Waldman, D.C.E.D.Pa., 69 F.Supp. 646.

■ Finally, and with sole reference to appellee's cross-appeal, we think it clear that since appellant has never alleged or seriously contended that the publication of the disputed material actually constituted unfair competition and since we further view the evidence as failing affirmatively to establish that appellant has acquired any trade-mark rights or secondary meaning in the merely descriptive words and terms employed in appellee's advertising,[11] these particular findings of the Trial Court and

ginia, May 6, 1936; "Red Top Econo Mesh Products", published by U. S. Gypsum Company, November 2, 1936; "Flat Expanded Metal", dated October 12, 1939, published by the Consolidated Expanded Metal Companies, Wheeling, West Virginia.

From the above cited prior art patents and publications, the Trial Court found that [114 F.Supp. 228]:

"The prior art clearly teaches that the combination of various ventilated tops, such as woven wire and perforated metal, with a framework for support is old; when flat expanded metal is substituted for such prior art ventilated materials, the frame serves the same purpose as the frameworks of the prior art, namely, to support the ventilated top; any advantage in the substitution of flat expanded metal for the prior art ventilated metals is due solely to the inherent properties of the flat expanded metal and not to any new cooperation between the framework and the expanded metal; flat expanded metal is old and the results obtained in its use were not surprising or unexpected and could be predicted. * * *"

In further holding Claim 1 invalid for its failure, as a matter of law, to meet the prescribed test for patentable invention, the district court, citing numerous supporting authorities, held that:

"Claim 1 of the patent in suit is invalid for want of invention because it merely involves the selection and substitution of flat expanded metal for other metallic surfaces having openings therein, both flat expanded metal and said metallic surfaces having been known to the public prior to the filing date of the patent in suit. * * *

"Claim 1 of the patent in suit is invalid for want of invention because it is merely directed to a new use of a well known commercial material. * * *

"* * * Claim 1 of the patent in suit is * * * invalid because the discovery of latent or inherent properties of an old and well known material does not constitute invention. * * *"

11. Although appellee's advertisement does use certain common descriptive words also employed by appellant, such as "all steel", "ventilated" and "rigid", and further uses ordinary sales language imply-

its conclusion based thereon, which actually grant only nominal rather than any substantial relief, must be reversed, together with that portion of the judgment taxing one-fourth of the costs against appellee.

The judgment is hereby affirmed on the main appeal, and reversed on the cross-appeal.

ing that its table "makes ironing easier, safer, faster, better", etc., in a manner similar to that employed by appellant, we think it clear even from a cursory inspection of these two advertising exhibits that there is no such similarity or possibility of deception of the buying public exhibited therein which could ordinarily result from their simultaneous use as would justify the grant of any injunctive relief, particularly since appellee's trademark, "Murray Steel-Top", and the additional identifying phrase, "Product of Murray Metal Products Company", are prominently displayed both at the top and bottom of appellee's advertisement, in a way which substantially distinguishes it from appellant's product. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Pulitzer Pub. Co. v. Houston Printing Co., 5 Cir., 11 F. 2d 834; International Htg. Co. v. Oliver Oil & Gas Co., 8 Cir., 288 F. 708, 30 A.L. R. 611.