**FRITZ W. GLITSCH & SONS, Inc.,**
Appellant,

v.

**WYATT METAL & BOILER WORKS,**
Appellee.

**WYATT METAL & BOILER WORKS,**
Appellant,

v.

**FRITZ W. GLITSCH & SONS, Inc.,**
Appellee.

No. 15291.

United States Court of Appeals
Fifth Circuit.

July 15, 1955.

John A. Dienner, Edward C. Grelle, Chicago, Ill., Joseph H. Schley, Alto B. Cervin, Dallas, Tex., for appellant.

Garrett R. Tucker, Jr., Delmar L. Sroufe, Frank B. Pugsley, Houston, Tex., Ralph W. Malone, Dallas, Tex. (Baker, Botts, Andrews & Shepherd, Houston, Tex., Malone, Lipscomb & Seay, Dallas, Tex., of counsel), for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

This is a patent appeal and cross-appeal from a judgment of the district court holding appellant's Reissue Patent No. 22,946 for a "Bubble Tower" valid, but not infringed by certain devices manufactured and sold by Wyatt Metal & Boiler Works. Glitsch & Sons, Inc., hereinafter called Glitsch, appeals mainly from the holding of non-infringement, the denial of damages and injunctive relief; while Wyatt Metal & Boiler Works, hereinafter called Wyatt, cross-appeals from the holding of validity and the taxation of costs against it.

The patent in suit is a reissue of U. S. Patent No. 2,210,808 originally issued on August 6, 1940, to Hans C. Glitsch, President of the Glitsch corporation. It relates to "bubble trays" for use in "bubble towers", such devices being used mainly in the refining of petroleum and the separation of crude oil into gasoline, kerosene, etc. by means of fractional distillation. The patent testimony and exhibits reveal these "bubble towers" as containing a number of "bubble trays" mounted at different elevations within a cylindrical tank, the various trays being provided with numerous short tubes extending through openings in the floor of the tray, the tubes being covered by "bubble caps", so that the vapor coming up through the short tubes is compelled to pass down under the rims of the cups, which rims are submerged in the liquid held on the tray, and the part of the vapor not then liquefying bubbles up to the next higher tray. Fractional condensation of the constituent vapors is thereby effected at various temperatures maintained at the different tray levels, from each of which the accumulated liquids are drawn off in a continuous process.

Specifically, Claims 3, 11, 12, 13, 14, 16, 17 and 18 of the Glitsch reissue patent in suit are alleged to be infringed by four different types of trays manufactured and sold by Wyatt. Four typical claims setting forth the alleged novelty of the Glitsch invention are quoted in the margin.[1] Glitsch, having prevailed below

1. "3. A bubble tray for a bubble tower tank including a plurality of transverse trusses mounted within the tank with their ends secured to the tank wall, a plurality of elongate floor sections supported on the trusses each section spanning the space between two of the trusses with its longitudinal edge portions resting on said trusses and spaced apart, and frictional clamping means engaging the longitudinal edge portions of adjacent floor sections for securing said sections to the trusses, said means being arranged to permit limited lateral movement of the floor sections with relation to the trusses.

* * * * * *

"14. A bubble tower floor including a plurality of trusses each being construct-

ed of relatively thin metal and including an upright portion and a transverse top portion, a plurality of thin sheet metal sections having their edges mounted on the transverse tops of said trusses in spaced order, and friction means for confining said sheets on said trusses, whereby said sheets may undergo thermal expansion without buckling.

* * * * * *

"16. A bubble tower floor including, a plurality of transverse rigid trusses, thin metal sheets incapable in themselves of carrying the load imposed on the floor having certain of their edges independently mounted on said supports, and friction means for confining the edges of said sheets against vertical displacement on the trusses while permitting a limited

on the issue of validity, here attempts to establish infringement by applying the detailed structure of each type of accused device, illustrated in material part by colored drawings in brief, to one of these typical claims of the Glitsch patent, color for color and element for element, or its equivalent. On its cross-appeal attacking the holding of validity, Wyatt insists that, by standards appropriate for an improvement or combination patent,[2] these claims reveal mere mechanical skill rather than patentable invention, and are therefore clearly invalid; that they are further invalid for anticipation by a number of prior art patents, principally the Foster-Wheeler stainless steel bubble tray built in 1934 for use by a Chicago plant of The Armour Company in the fractional distillation of fatty meat acids, and the Lowe patent No. 558,319, issued in 1896 for the purification of lime from feed water,[3] neither of which were cited or considered as prior art references by the Patent Office before issuance of the Glitsch reissue patent in suit, and which Wyatt insists so pre-empt the inventive concept, if any, embodied in the Glitsch patent as to upset the normal presumption of its validity from issuance which might otherwise attach.[4]

The patentee Glitsch makes no broad claim to have invented bubble towers, bubble trays, or bubble caps, as such, or to have discovered the particular process of fractional distillation used, these structures and the process admittedly being well known in the petroleum refining art long before the advent of his patent.[5] As stated in his patent, one primary object of the particular improvement combination claimed as his invention was the construction of a more durable and efficient bubble tray made of a lightweight metal, such as stainless steel, which would be more resistant to corrosion than the conventional steel and cast iron trays then in use, and yet would still be cheap enough to be commercially feasible. In addition to their tendency to corrode from the "sour" crude oil and carbon deposits left by the refining process, Glitsch insists that the conventional type steel and cast iron trays had other disadvantages for commercial use, resulting from their heavy weight and inherent stiffness, which made them difficult to install within a "bubble tower", their slowness to heat up to necessary refining temperatures and likewise to cool down after a "run", their unyielding resistance to a possible "bubble tower" explosion which enhanced the chance of operational equipment loss, etc.

Though appellant concedes that "the invention looks simple, now that it has been successfully produced," it insists that "that appearance of simplicity is deceptive," for in order to accomplish his purpose Glitsch allegedly had to solve a vast array of complex problems peculiar to the refining art which he claims that none of his predecessor contributors to the art had successfully resolved. Among these problems allegedly first encountered and solved by Glitsch were

---

lateral movement of the sheets relative to each other, the trusses being of sufficient rigidity to carry the load imposed on the completed floor.

\* \* \* \* \* \*

"18. A tray floor for a bubble tower including, a plurality of transverse rigid supports, thin metal sheets having edge portions independently mounted on said supports, a single row of upstanding fastenings on each of said supports between edge portions of adjacent sheets, and friction clamping means on the upstanding fastenings overlying the adjacent edge portions of said sheets."

**2.** See Great A. & P. Tea Co. v. Super-market Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Ritchie v. Lewis-Browning Mfg. Co., 5 Cir., 196 F.2d 434.

**3.** One other pertinent prior art patent relied upon as anticipatory of the Glitsch reissue patent is the Holmes patent, No. 1,965,549, and certain stainless steel bubble trays constructed by The Texas Company thereunder.

**4.** See Jacuzzi Brothers v. Berkeley Pump Co., 9 Cir., 191 F.2d 632, 634; Rosaire v. Baroid Sales Division, National Lead Co., 5 Cir., 218 F.2d 72, 75.

**5.** See, e. g., Lummus Patent No. 1,226,-898, issued May 22, 1917.

**334**

those inherent in designing a bubble tray which would, in spite of its lightweight construction, retain enough rigidity and strength to remain level while supporting a liquid load, still resist corrosion, be constructed in removable sections so as to facilitate assembly within the limited space available inside a bubble tower, and come apart easily so as to prevent destruction in the event of an explosion. The patentee Glitsch supposedly solved all of these problems by his conception of supporting a thin, lightweight metal "bubble tray", preferably made of stainless steel because of its corrosion-resistant qualities, upon a number of spaced parallel beams or trusses extending from side to side across the inside space of a "bubble tower", with the beams fastened at each end to the side of the tower in such manner as to support the weight of the tray, and without the necessity of forming flanges or attaching the heavy stiffening bars used to support the conventional type cast-iron and steel bubble tray plates. He then conceived the idea of cutting the light tray metal into strips wide enough to span the space between the parallel beams within the tower, and placed the edges of adjacent tray strips side by side on each beam with a gap between the edges so as to allow for normal heat expansion and contraction, afterwards securing each metal tray strip so as to create a uniformly level tray floor by means of a row of bolts with large diameter washers spaced lengthwise each beam in such fashion as to bridge and secure the expansion gap between the adjacent strip edges.

Essentially on the basis of the above ideas, supposedly originating exclusively with its patentee, Glitsch vigorously defends the validity of its concept in bubble tray design as a patentable improvement combination entitled to protective monopoly, the inventive concept supposedly exhibited by its patented structure allegedly being beyond the capacity of ordinary skilled artisanship of the trade, and producing more than an unpatentable old and expected result. Glitsch further insists that its present combination "accomplished a number of surprising consequences" amply sufficient to elevate it to the dignity of patentable invention, some of these "surprising consequences" being that the oversize washers operate in unusual fashion to secure the spaced edges of adjacent tray strips frictionally, so as to permit them to expand and contract under varying temperatures without causing buckling or other tray distortion which might adversely affect the desired uniformity of liquid level for effective processing, at the same time producing a cantilever support for the middle of the tray strip which prevents any sagging under a load which might also disturb the liquid level, etc. Practically conceding that the above expedients on the part of its patentee represent a "simple solution of the problem", Glitsch still contends that its patented structure, viewed as an original over-all combination, rather than in the light of its old and well known individual elements, produced "a basically new design" which first made possible the practicable use of thin, lightweight metal sheets for bubble tray floors in towers of any diameter; that, in any event, especially in view of the presumption of validity from due issuance by the Patent Office, it would be inappropriate for this Court to review the district court's finding of validity under Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A.

Though we have carefully considered both basic issues of validity and infringement, we think decision here must necessarily turn on the proven invalidity of the patent in suit, both as anticipated in fact by the prior art and as failing to meet the stricter test for patentable invention now required to justify monopoly protection. See Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162; Robinson v. DiGaetano, 5 Cir., 212 F.2d 1, 3; J. R. Clark Co. v. Murray Metal Products Co., 5 Cir., 219 F.2d 313, 318. As in the recent J. R. Clark Co. case, supra, we consider it unnecessary for us to decide whether, assuming validity, Glitsch might be entitled to prevail

on what appears a closer issue as to infringement, for we are unable to by-pass this threshold issue, particularly since the validity vel non of the patent in suit appears affected with some public interest and of considerable importance to the oil refining industry. See Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Vincent v. Suni-Citrus Products Co., 5 Cir., 215 F.2d 305, 312; Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 195 F.2d 645, 647. And while infringement is usually a question of fact, on which the normal presumption of verity might attach to the findings of the Trial Court under Rule 52(a), F.R.C.P.,[6] the issue of whether a particular patent meets the requisite standard of invention essential to validity is now generally regarded as a fully reviewable question of law, as aptly illustrated by the late Mr. Justice Jackson's classic admonition for the Court in the Great A. & P. Tea Co. case, supra, that:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to substract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in con-

gregation as a monopoly." 340 U.S. 152, 153, 71 S.Ct. 127, 130; see also, Robinson v. DiGaetano, supra, 212 F.2d at page 4.

■■ Viewed objectively, rather than purely from the vantage point of hindsight, the sum and substance of the patentee Glitsch's contribution appears to us simply the construction of a practicable bubble tray from multiple strips of stainless steel, supported by conventional type trusses and secured by bolts and washers acting as friction clamps, all of which mechanical elements are obviously old and well known, and which function together in their usual manner to produce an old and readily foreseeable result. Great A. & P. Tea Co. case, supra. The Glitsch combination at best illustrates only an improvement in bubble tray design fairly attributable to ordinary mechanical ingenuity and skill in the trade, rather than patentable novelty, and though useful and possibly enjoying some degree of commercial success, we think it hardly attains the dignity of true invention. This is especially true in view of the prior art Foster-Wheeler and Lowe structures, both of which were highly pertinent references not even considered by the Patent Office, so that the usual presumption of validity which might otherwise attach from issuance is greatly weakened, if not completely disspelled. Jacuzzi Brothers, Inc., v. Berkeley Pump Co., 9 Cir., 191 F.2d 632, 634; Royal Patent Corp. v. Monarch Tool & Mfg. Co., 6 Cir., 203 F.2d 299, 300. Certainly the idea of applying an old metal like stainless steel to a new use in bubble trays, with its inherently noncorrosive and malleable characteristics so advantageous for such use, does not in itself amount to patentable invention, any more than did the idea of using flat expanded metal for an ironing table top in our recent J. R. Clark Co. case, supra.[7]

---

6. See, e.g., Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 206 F.2d 772, 779; Southern States Equipment Corp. v. USCO Power Equipment Corp., 5 Cir., 209 F.2d 111, 120.

7. True, the claims of the patent define and measure the invention, and they contain no express limitation as to the use of stainless steel in the patented structure, but we think Glitsch significantly fails to mention any other lightweight, flexible,

The above holding of invalidity of all claims in issue of the Glitsch reissue patent in suit renders unnecessary any further consideration of the infringement issue, or the other questions presented. The judgment is hereby reversed and the cause remanded with directions to enter judgment declaring the Glitsch reissue patent invalid, and awarding Wyatt its costs in the district court, the costs of this appeal also to be taxed against Glitsch.

Reversed and remanded with directions.

and noncorrosive metal so readily adaptable and commercially feasible for bubble tray use so that, irrespective of the broad language of the claims, the use of

stainless steel in a bubble tray structure may fairly be construed as a basic teaching of the patent.