**GEORGE P. CONVERSE & COMPANY, Inc., Harry F. Waters, and R. R. Williams, Inc., Plaintiffs,**

v.

**STANDARD PACKAGING CORP., Defendant.**

**Civ. A. No. 644–55.**

United States District Court
D. New Jersey.
July 21, 1959.

David M Satz, Pitney, Hardin & Ward, by Frank C. O'Brien, Newark, N. J., John H. Glaccum, Davis, Hoxie, Faithfull & Hapgood, by William E. Dampier, New York City, for plaintiffs.

Lum, Fairlie & Foster, by Raymond W. Troy, Newark, N. J., Kenyon & Kenyon, by George T. Bean, Ralph L. Chappell, Francis T. Carr, New York City, for defendant.

WORTENDYKE, District Judge.

The action is for damages for alleged past infringement of presently expired United States Patent No. 2,125,758 ('758 or "machine patent") issued August 2, 1938 to plaintiff Waters, and for alleged past and current infringement of United States Patent No. 2,437,057 ('057 or "method patent") issued March 2, 1948 also to Waters.[1]

Plaintiff George P. Converse & Company, Inc. was formerly the exclusive licensee of both patents here in suit but since the commencement of this action, they were assigned to plaintiff R. R. Williams, Inc. '758, referred to by the plaintiffs as the "resilient jaw" patent, covers a heat sealing device for securing together overlapped edges of material in making closed bags for the packaging of foods and other substances. It is comprised of a heat sealing element, and a

---

[1]. The action originally involved three additional patents, also issued to Waters, as to which the action was voluntarily dismissed by the plaintiffs. One of such patents had been declared invalid in George P. Converse & Co., Inc. v. Polaroid Corporation, D.C.Mass.1956, 141 F.Supp. 631, affirmed 1 Cir., 1957, 242 F.2d 116, and in George P. Converse & Co., Inc. v. Thomas J. Lipton, Inc., D.C.N.J.1957, 149 F.Supp. 105.

backing roll of resilient material. '057, referred to by plaintiffs as the "V-dam" patent, covers a claimed method for sealing such surfaces. The only claim of '758 here relied upon by plaintiffs is as follows:

"5. In a bag making machine, means to adhere overlapping surfaces of material together comprising in combination, a heat sealing element, a backing member cooperating with said heat sealing element provided with a rubber covering capable of resisting high temperatures."

'057 has but one claim, viz.:

"The method of forming heat seals comprising juxtaposing heat-sealable faces of sheet material, and applying heat and pressure to interfuse the same in a continuous seam with a flaring, generally V-shaped excess of the interfused sheet material formed as a dam interiorly and longitudinally of the seam."

Defendant denies the charged infringements, alleges that the patent claims relied upon by plaintiffs are invalid, and counterclaims for declaratory judgment accordingly. Invalidity of '758 is claimed by reason of: (1) disclosure in prior art patents; (2) failure of its aggregation of old elements to perform any new or different functions than theretofore; and (3) indefiniteness of the claim. The invalidity of '057 is claimed by reason of: (1) disclosure in prior art patents; (2) the disclosed invention, if any, is too insignificant and trivial to be patentable; (3) abandonment of the claimed invention; (4) unpatentability of the method taught; and (5) lack of requisite of utility of the method described.

Waters testified that early in the course of his experimentation which led up to his application for the '758 patent, he had a bag machine built which employed a heated metal bar operating against a backing member faced with rubber steam hose, which applied heat to the material to be sealed. The material was coated with a thin film which provided the seal. This machine left an ineffective seam in the material to be sealed as the thin film flowed away under the heat and pressure. He next modified the surface of the sealing jaw by making it concave and provided for two outer resilient edges. This machine still failed to handle the thin film satisfactorily. He next crowned the surfaces of the jaws within the boundaries of the sealing area itself. This last modification, the "V-dam" process, permitted high-speed (60 plus per minute) seal production with a strong, fluid-tight seam. Waters described this process as bringing together the two coated surfaces to be sealed, applying heat and pressure to achieve a bond and flow of the coating material. He does not know whether bonding precedes or succeeds the flow, but says that the sealing material flows inwardly of the bag and forms a V opening in that direction. This comprised plaintiff's testimony on the issue of the validity of the patents in question. The remainder dealt with the issue of infringement.

The former director of engineering for defendant corporation, a specialist in packaging machinery, testified for the defendant upon the issue of validity. He described the prior art patents placed in evidence by defendant in relation to the patents in suit and to defendant's accused machines.

### The Machine Patent

In his original application for the '758 patent, filed on May 8, 1935, Waters claimed:

"1. A backing member for heat sealing element in a bag making machine comprising a rigid member having a resilient covering.

"2. A backing member for a heat sealing element in a bag making machine comprising a rigid member having a rubber covering, said rubber covering being of a type capable of resisting high temperatures.

"3. A backing member for a heat sealing element in a bag making machine comprising a rigid member

having a resilient covering, the surface of said resilient covering being ribbed.

"4. In the process of manufacturing bags, the step of forming seams therein by pressing the areas to be seamed between a heated element and a resilient element.

"5. A heat sealing device for a bag making machine comprising a heated element and a resilient backing member.

"6. A heat sealing device for a bag making machine comprising a heated element and a backing member, said member consisting of a rigid bar having a covering of a heat-resistant, resilient substance having a ribbed surface."

The Patent Office Examiner rejected Waters' claims as unpatentable for lack of invention over prior art and being obviously fully met in the art. He cited Becker patents Nos. 1,756,919 of April 29, 1930, and 1,780,142 of October 28, 1930; Malocsay No. 1,887,844 of November 15, 1932; and Staud No. 1,925,509 of September 5, 1933. Waters then, in requesting reconsideration of these rejected claims, also offered an added claim:

"7. In a sealing process, the step of holding the material to be sealed under resilient pressure against the sealing element."

Citing as further references Barlow No. 332,778 of December 22, 1885, Miller No. 1,142,976 of June 15, 1915, Moore No. 1,940,561 of December 19, 1933, and Kreiger (British) No. 14,594 of July 14, 1910, the Examiner, upon reconsideration, allowed Waters' claims 3 and 6 and rejected the other five claims. Waters then requested the addition of two more claims, which were rejected by reason of the Kreiger and Barlow patents referred to above. Thus, by December 23, 1936, only claims 3 and 6 stood allowed. Waters, however, persisted, and on June 22, 1937 sought to add four further claims, each of which described a heat sealing element and a backing member cooperating with the heat sealing element provided with a rubber covering capable of resisting high temperatures, for use in adhering overlapping surfaces of material by the application of heat and pressure. Three of these claims were rejected by the Examiner, in view of a newly discovered reference, Dayton No. 1,926,803, issued September 12, 1933. One claim was allowed to stand. Waters' prior two additional claims were again rejected. Waters responded with yet an additional claim which was rejected by the Examiner as unpatentable over Kreiger. However, upon reconsideration, the Examiner, on May 10, 1938, took the final position that the original claims 3 and 6 plus four of the additional claims, should stand. One of these additional claims (claim 11) became claim 5 relied upon herein. As finally issued, the title of the patented invention was stated as "Machine for Manufacturing Bags."

The defendant has cited certain patents, not considered by the Examiner in passing on Waters' '758, as being anticipatory of claim 5. Becker No. 1,756,919 (Becker '919), referred to by the Examiner in connection with his rejection of certain of Waters' original claims, was a product patent. It covered a special container or wrapper consisting of a tubular cellophane casing for a cigar. Becker, together with Munson a co-patentee of Becker '919, also patented an apparatus for the manufacture of containers from cellulose sheets, Munson No. 1,953,122 (Munson '122), issued April 3, 1934. Munson '122 described a machine which was primarily intended to form the sheets into tubes, cut them into desired lengths and fold and seal the ends thereof. This sealing was accomplished by the use of heat and pressure, passing the folded end between two heating rolls in the first step, and immediately thereafter between another pair of rollers, one of which had a rubber insert to afford a resilient surface against which to apply further pressure in perfecting the bond. Waters' '758 eliminates one of these steps by using but a single set of jaws or rolls, one of which contains a heating element, the

other being faced with a resilient coating, such as rubber, to afford a maximum contact between the rolls while the web is passing between.

In addition, defendant refers to Auld No. 1,360,982 (Auld) issued November 30, 1920, and Scharpf No. 1,997,268 (Scharpf) issued April 9, 1935, as being anticipatory of claim 5. Each of these latter patents was for a machine for and method of vulcanizing rubber tire tubes. Each effects the desired result by means of heat and pressure, but in place of a resilient backing sheet such as is used by Waters, the second ply of the tube itself serves that purpose in the vulcanizing process by affording a resilient backing for the materials (tube and patch) being vulcanized. Uniformity and completeness of contact and complete adhesion are the desired objects of each of these patents, including that of Waters. These purposes are achieved in each by the application of heat and pressure, against resilient backing, to plies of material to be bonded. Waters expresses this objective in his specifications to '758 as follows:

"By the provision of such backing member, a perfect seal is insured in spite of variations in the manner in which the edges are overlapped due primarily to the fact that the resilient backing roll will exert a constant pressure on the overlapped areas to force this area firmly against the heat applying roll."

Plaintiffs argue here that the Auld and Scharpf patents, the "vulcanizer patents", do not anticipate Waters' '758 as they are not identical; '758 being a patent for a bag making machine while Auld and Scharpf cover tire patching machines.

■ That the Auld and Scharpf devices were used for a different purpose than that for which Waters' device is designed does not, of itself, preclude anticipation. Plaintiff patentee in J. R. Clark Co. v. Murray Metal Products Co., 5 Cir., 1955, 219 F.2d 313, made a contention similar to that of Waters herein. In the Clark case the patentee insisted that the use of flat expanded metal as an ironing table top involved patentable novelty because nowhere in the prior art was it recognized that this type of metal was peculiarly adapted to serve this purpose. The Court noted that the advantageous properties of this particular metal which suited it for this particular purpose were well known prior to the issuance of the patent in suit. The mere substitution of this metal for what had formerly been used did not constitute patentable invention. It was a logical step in the design of an ironing table. The Court concluded that although the patentee "may have been the first to apply these known variable factors to the production of a more efficient ironing table top * * * his successful experimentation is more appropriately characterized as skilled artisanship of the trade, rather than true invention." Id. 219 F.2d at page 319. See also Fritz W. Glitsch & Sons, Inc. v. Wyatt Metal & Boiler Works, 5 Cir., 1955, 224 F.2d 331.

■■ As Justice Jackson stated in defining the criterion for a combination patent in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162:

"The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

The Patent Act of 1952, 35 U.S.C. §§ 100–104, in codifying the prior law, has not supplanted the value of these prior

precedents. See Deering Milliken Research Corp. v. Electric Furnace Corp., 6 Cir., 1958, 261 F.2d 619, 621. Cases such as Anderson Co. v. Sears, Roebuck & Co., 7 Cir., 1959, 265 F.2d 755, have distinguished the A. & P. case, on the grounds that the result obtained was not "obvious, expected, old or merely an improvement over an old result." Id. at page 762. In the Anderson case, supra, there was a "novel combination of old elements which so cooperated with each other so as to produce a new and useful result or a substantial increase in efficiency." Ibid. In the case at bar, as in the A. & P. case, the aggregation of old parts produced no new or different function in combination. It was "merely an improvement over an old result." There is no novelty in employing in the backing member a resilient surface against which to exert pressure upon the sheets of material to be adhered together. If heat is applied in the process it is also perfectly obvious that such a resilient backing surface must necessarily be heat resistant. Indeed, as stated, the initial claim of Waters for patentability of the backing member was rejected as well known in the prior art. The Supreme Court early stated, in Ansonia Brass & Copper Co. v. Electrical Supply Co., 1892, 144 U.S. 11, 18, 12 S.Ct. 601, 604, 36 L.Ed. 327, that *nothing is better settled in this court than that the application of an old process to a new and analogous purpose does not involve invention, even if the new result had not before been contemplated.* (Emphasis added.)

■■ The Patent Act clothes a duly issued patent with the presumption of validity and the burden of overcoming that presumption and establishing invalidity rests on the defendant. 35 U.S.C. § 282 (1952). The proof necessary to overcome that presumption must be clear and convincing. See Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 1945, 152 F.2d 895, 904. That presumption arises from the issuance of the patent by the Patent Office. See Colgate-Palmolive Co. v. Carter Products, Inc., 4 Cir., 1956, 230 F.2d 855, 862, certiorari denied 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.

2d 59. However, when the Patent Office has not considered important contributions of the prior art, the presumption of validity arising upon the issuance of a patent is greatly weakened, see Dole Refrigerating Co. v. Amerio Contact Plate Freezers, Inc., 3 Cir., 1959, 265 F.2d 627, 629, if not completely destroyed. Cornell v. Adams Engineering Co., 5 Cir., 1958, 258 F.2d 874. This poses the question of whether the teachings of Auld, Scharpf and Munson anticipate those of Waters in '758. In view of the prior discussion of these patents, the Court is compelled to the conclusion that they do so.

35 U.S.C. § 112 (1952), provides that the specification in the patent application "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." It follows, therefore, that the claim limits the invention. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672. Thus Waters' '758 is limited to means, in a bag making machine, to adhere overlapping surfaces of material together, comprising in combination (1) a heat sealing element and (2) a backing member cooperating with said heat sealing element, with a rubber covering capable of resisting high temperatures. As early as 1885, Barlow No. 332,778, referred to by the Examiner in rejecting Waters' original claims, taught "[t]he process of making compound material * * * consisting in combining sheets or webs of paper, cloth, or other material by pressing together such sheets or webs with interposed adhesive material between two rolls, one roll having a rigid and the other roll an elastic or resilient surface * * *." The use of a resilient backing surface to oppose pressure applied in effecting the lamination of two sheets or webs of material interposed with adhesive to achieve maximum area contact and adherence between the sheets is therefore old in the art to which the '758 patent in suit relates.

In the specifications of Waters' '758 (p. 2, Col. 1, lines 1–9) is the following recitation:

"In Figs. 1 and 2 there is set forth *the essential portions of a well known type of bag or envelope forming machine* in which a strip of material 10 and a strip of material 11 are superimposed and passed between feed rollers 12. Either strip may comprise fusible material or may comprise a sheet of base material coated with a fusible substance, or may be preprinted in defined areas with strips 13 of fusible substance." (Emphasis added.)

The use of the italicized phrase is a clear admission by Waters that the stated features of his machine were old in the art. To sustain a claim of invention in '758, Waters merely passes the two strips between a pair of rolls, the upper of which is provided with a heat sealing projection which presses the combined webs against the lower backing roll which is covered with yielding and heat-resisting rubber. The inventor adds that a firm absolute bond may best be obtained against a backing roll of this type, as distinguished from the ordinary unyielding roll. Essentially, therefore, the only novelty in the device is the substitution of a heat resistant yielding surface for an unyielding surface upon the backing roll against which the heating element presses the web. As the late Judge Modarelli of this Court stated in George P. Converse & Co., Inc., v. Thomas J. Lipton, Inc., supra (note 1), 149 F.Supp. at page 108:

"Authorities agree that that which is obvious to persons skilled in the art, or involves mere substitution of materials, or the application of an old process to a new but analogous use is not invention."

Thus, the art prior to the issuance of the '758 patent in suit discloses machine devices for sealing sheet material in forming containers by means of the application of heat and pressure upon the sheets backed against a resilient surface. It is obvious that the heat applied must not be high enough to damage the materials to be sealed, that a rubber covering upon the backing member will afford resiliency to the unit, and that the composition of the rubber must suffice to withstand such heat as passes through the materials to be adhered and the interposed adhesive substance. Against such a background, the Waters device is at best an improvement which "merely uses the standards of a prior invention which shows some change in form and position but uses substantially the same device performing precisely the same offices with no change in principle. * * * [A] mere improving of a machine in the production of well-known results is not sufficient to make patentable a rearrangement or aggregation of old elements." Churchill Meat Co. v. Brodsky, D.C.N.J. 1958, 160 F.Supp. 241, 246, affirmed 3 Cir., 1958, 262 F.2d 77. In evolving the device taught in his machine patent '758, Waters has failed to display invention or even more ingenuity than the work of a mechanic skilled in the packaging art. Rock-Ola Mfg. Corp. v. Cusano, 3 Cir., 1953, 206 F.2d 551, 553. I conclude therefore that claim 5 of this patent is invalid.

### The Method Patent

In his '758 machine patent Waters necessarily and incidentally disclosed the method for which he secured the '057 patent which issued almost ten years later. Waters' '057 patent is entitled "Heat Sealing Method." Its single claim has been quoted above. Waters states in the specification that it relates to a novel method of forming reinforced heat seals in thermoplastic bag members. Waters suggests two difficulties attending the use of the prior art method of joining thermoplastic sheets by heat sealing between metal bars: (1) the thermoplastic material immediately under the influence of heat and pressure was squeezed out of place which left the seam weak; and (2) in exaggerated cases the application of excessive heat or pressure, or both, would create a void of any interfused plastic material in the seam by reason of the

liquifaction and squeezing out of the material from that seam area. Thus, Waters claimed to have evolved the method of correlating the degree of applied pressure and time of sealing by the use of a specially conformed sealing assembly consisting of a metal heated bar and resilient backing member so conformed and arranged as to insure a substantially V-shaped dam of the thermoplastic material in the line of seam.

Waters made twenty claims in his application for the method patent, of which only one (18) was ultimately allowed in the patent as issued, and which is the sole claim involved herein.

The pertinent prior art in this field brought to my attention, is as follows:

Keppler No. 761,890, issued June 7, 1904, related to an improved process of making bag bodies from sheet rubber stock for use as hot water bottles and the like. Typical of the claims in that patent is an improved process consisting of the interposition of a reinforcing marginal strip of rubber compound between the two side walls of the bag body, then homogeneously uniting the body-walls and the interposed marginal reinforcing strip by pressure and then vulcanizing the bag body.

Moore No. 1,940,559, issued December 19, 1933, taught a method of uniting and sealing wax coated paper by applying an adhesive to that portion of the paper to be united and sealed, subjecting to heat the portion of the paper having the adhesive thereon to liquefy the wax and permit the adhesive to flow into contact with the pores of the paper as expanded by the heat. This allowed the absorption of the adhesive, and the drying thereof when absorbed by the paper, without the application of pressure.

Royal No. 2,051,903, issued August 25, 1936, was a product patent covering a bag or similar container made from a blank, formed from a longitudinally seamed tube of coated cellophane. Portions of the cellophane coating were removed in substantially longitudinal lines from the zones to be united, by an abrasive action applied directly to the surface of the coated cellophane.

Bergstein No. 2,114,623, issued April 19, 1938, covered a method of providing for the internal expansion of sealed bags, and hermetically sealing the same. Bergstein dscribes the method as "a mode of sealing the open end of bags having contents therein, said bags being made of substantially impervious flexible material, preferably heat sealable on the interior surface at least, all seams of which are hermetically sealed." Bergstein No. 2,114,625, issued the same day as '623, covers a method of forming containers. Typical of the claims in this method patent is No. 14, which describes a "method of forming heat-sealed joints in a bag made of flexible material having thermoplastic surfaces consisting in bringing opposite surfaces into positive facial contact with one another by curving same in a narrow zone extending in a substantially straight line and while in said curved contacted relationship causing heat to be applied to said zone, a clearance space being provided adjoining the convex side of said zone."

Vogt No. 2,156,466, issued May 2, 1939, covers both a method and an apparatus for making packages for use in containing flowable material. After the reception of the material to be contained into a tubular enwrapment, the package is sealed by the application of heat, without the addition of any adhesive which might contaminate the contents.

Another Waters patent, No. 2,220,873, issued November 5, 1940, related to improvement in the manufacture of fluid-tight bags to serve as containers of fluid and it prescribed steps in forming the seams to avoid injury to the bag material. The containers, made from sheets of flexible material, are coated with thermoplastic liquid-proof material on the side of the sheet forming the seams to avoid injury to the bag material. The containers, made from sheets of flexible material, are coated with thermoplastic liquid-proof material on the side of the sheet forming the interior of the container. The body of the container is provided with a seam comprising overlapped marginal edges into face-to-face relation. Each of the marginal edges

has a band of liquid-proof thermoplastic adhesive on the same side of the sheet as the coating, and a portion only of the adhesive is bonded together to unite the seam; the free portions of the adhesive bands being located adjacent the near edge of the seam *"whereby to provide a dam to protect the seam against leakage and to protect the coating during the sealing operation."* Waters applied for this patent on January 26, 1938, over four years prior to the application for his '057 patent herein.

Hallman No. 2,227,497, issued January 7, 1941, covers a heat sealing device employed in making bags of paper or other flexible material which has been previously coated on one or both sides with wax, paraffine or a moisture proof coating of a similar nature, in order to render it resistant or impervious to grease and moisture. The device is employed in a method of sealing bag bottoms formed by a bottom overlap of wax-coated paper. Hallman also found that the combined application of heat and pressure to the seam often resulted in the squeezing out of the adhesive so that a good joint could not be secured. He claimed to overcome this difficulty by melting the wax or other coating of the sheet material, thereby allowing the adhesive to strike through to the paper. The apparatus comprised a recessed pressing member, with means for heating the same, and a resilient member adapted to coact with the recessed pressing member. Positive heat and pressure is applied to the margin while heat without pressure is applied to the area of wax-coated paper carrying the adhesive, thus melting the wax and causing the adhesive to strike through to the paper.

The method aspect of Moore No. 2,249,392, issued on July 15, 1941, discloses the employment of heat sealing and pressure, yielding to resist deformation of the adhesive, to render air-tight and moisture-proof the seams of containers of products which must be hermetically insulated from the atmosphere.

Another Waters' patent, No. 2,253,946, issued August 26, 1941, relates to improvements in making bags and similar containers from material provided with a thermoplastic coating and for controlling the flow of the thermoplastic material in order to insure the formation of a seam or seal of uniform width. Claim 1 of this Waters' ('946) patent is strikingly suggestive of his '057 claim. It states:

"1. In a device for heat-sealing thermoplastic material, a backing member made of yielding resilient material and presenting a normally planar working face; and an elongated heatable element comprising a concave working face terminating in insulated marginal edge portions, said heatable element being adapted to be pressed against the material to be sealed and against said backing member to apply greatest pressure upon said thermoplastic material at said insulated edge portions, thereby defining a zone between said edge portions, and including means to apply heat at gradually decreasing pressure to that portion of said thermoplastic material within said zone, whereby to confine the fused thermoplastic material to said zone."

The variations, if any, between the methods disclosed by Waters in his '946 patent and in his '057 patent reflect ordinary mechanical skill rather than inventive capacity. The object sought to be achieved in each is the same, viz., uniformity and therefore impermeability of seal. The variations in the shapes and sizes of the sealing elements do not constitute invention.

Vincent No. 2,343,117 issued February 29, 1944, on application which preceded Waters' application for '057 by approximately four months. This invention claimed a new method of forming a heat-seal between two or more plies of a thermoplastic heat-sealable film, which former equipment had weakened by compressing the film at each edge of the heat-seal. Vincent taught the application of heat and pressure to one of the exposed surfaces of the film with greater pressure at one portion of the seam and gradually lessening the pressure in at least one direction so that the depression formed in the exposed surface gradually

tapers from the deepest portion thereof to the surface of the film where there is no coalescence, thus effecting a gradual blending of the plies so that the compressed film retains its normal strength and resistance to rupture along the less compressed portion of the seam structure.

Of the foregoing prior art patents reviewed, Bergstein '623, Vogt '466 and Moore '392 were not referenced in Waters' '057 herein.

It is only the V-dam feature of the '057 patent claim upon which Waters relies for novelty. In his '873 patent he also provides a dam to protect his seam against leakage, which he describes as follows:

"When pressure is exerted on the seam, usually by pressing the heatable element thereagainst, the heat will be transmitted through the base sheet, through the coating and through the bands of adhesive. Since the heat will flow directly downward through these layers, they will receive more of the heat than those layers not directly underneath the heatable element so that there is provided an excess of thermoplastic material adjacent the inner edge of the seam. This excess of material will prevent any possible destruction of the thin coating at the area contained within the dotted lines * * * since if heat applied should be sufficiently great to cause the flow of the coating, the excess of thermoplastic material in the bands of adhesive will also flow sufficiently to fill any breaks or cracks.

"It will be appreciated that the above method is equally efficacious when thin sheets of thermoplastic material previously mentioned are used in forming the container since, due to their thinness, the temperatures employed to form the desired seam may form small holes in the sheet material, particularly at the point where the edge of the heatable element strikes the material. By providing thermoplastic bands of adhesive wider than the working face

of the heatable element, sufficient material is present to fill any such holes."

In his specification for '057, Waters stated that the prior art of seaming thermoplastic sheets by sealing them between metallic bars, one of which contains a heating element, often resulted in a weak seam for the reasons hereinbefore stated. He then suggests that the employment of a metal heating bar pressing against a resilient backing member, "so conformed and arranged as to insure a substantially V-shaped dam or seam of the fused thermoplastic material at the heat seal", would obviate the risk of squeezing the thermoplastic material out of place. To achieve the V-shaped conformation of the thermoplastic sealing material at the seam, Waters merely gives the working face of the heating element a gentle curvature, curving outwardly, and in the surface of the rubber covered backing member impresses a groove into which the ridge on the surface of the heating bar descends forcing the two sheets together with their thermoplastic faces interfused and moving the sealing material toward the inner edge of the seam.

■ It is my opinion that the method described lacks novelty over the prior art as recognized by Waters himself. It is the result of "skilled artisanship of the trade, rather than true invention." J. R. Clark Co. v. Murray Metal Products Co., supra, 219 F.2d at page 319. If the use of plane surfaces upon the heating and backing members occasionally caused a squeezing out of the sealant, that substance necessarily flowed either to one side or the other of the area of complete contact between the two sealing elements. To prevent this uncontrolled flow of the sealant, the employment of a "tongue-and-groove" relationship between the surfaces of the rotating rollers would most likely suggest itself to any person of ordinary mechanical skill in the crowded field of packaging machinery. This being so, we are again brought face to face with the principle stated in Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58: "if an improvement is

to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art." Such principle has now been codified in the 1952 Patent Act wherein it states that a patent is not valid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. See Stanley Works v. Rockwell Mfg. Co., 3 Cir., 1953, 203 F.2d 846, 849. I conclude that Waters' '057 also is invalid for lack of invention.

Having found both patents herein invalid, it is unnecessary to decide the question of infringement. See Sinclair & Carroll Co., Inc. v. Interchemical Corp., 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L. Ed. 1644. This opinion shall serve in lieu of the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a), 28 U.S.C.

An order may be submitted in conformity with the views herein expressed.